Bennie WOODSON, as Administrator of the Estate of Elizabeth W. Terrell, Deceased, and as Administrator of the Estate of John Thomas Woodson, Deceased, Plaintiff–Appellant,

v.

PORTER BROWN LIMESTONE COMPANY, INC., and Felix Ewing Morris, Defendants/Appellees.

Supreme Court of Tennessee,
at Nashville.

Feb. 14, 1996.

ror's and litigant's rights are viable in civil, as well as criminal, cases. *Edmonson v. Leesville Concrete Company, Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). In the case before the Court we must consider the impact of these rules in a civil case in which the excluded minority juror declines to serve.

The parties view the issue before us differently. Plaintiff states the constitutional issue before the Court as follows:

> Does a black litigant in a civil action have standing to contest a jury tainted by a racially based peremptory challenge of the sole black member of the jury panel?

Defendants, conversely, phrase the issue as whether the trial court properly determined that the juror waived his right by knowingly and voluntarily refusing to sit on the jury. For the reasons set forth below, we reverse the Court of Appeals' decision in this matter and remand the case for a new trial.

Ann Buntin Steiner and Frank Steiner, Steiner & Steiner, Nashville, for Plaintiff/Appellant.

Robert E. Hoehn and John B. Carlson, Watkins, McGugin, McNeilly & Rowan, Nashville, for Defendants/Appellees.

## OPINION

WHITE, Justice.

In this appeal from the Cheatham County Circuit Court, we are confronted by a unique aberration of the rules of law announced by the United States Supreme Court in *Batson v. Kentucky, Powers v. Ohio,* and *Edmonson v. Leesville Concrete Company, Inc.* In that series of cases, the United States Supreme Court recognized first, that the criminal defendant's rights are violated when race-based challenges exclude a juror from service, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985); second, that the exclusion likewise violates a juror's rights, *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); and third, that the ju-

### I. Facts

In this wrongful death action, plaintiff's decedents were killed when their car was struck by a gravel truck driven by defendant Felix Morris, an employee of defendant Porter Brown Limestone Company, Inc. Plaintiff's theory of the case was that defendant Morris had failed to see the automobile driven by plaintiff's decedent and had collided into the rear of the car killing the two occupants. Plaintiff also theorized that defendant Porter Brown was liable because of its negligent entrustment of the vehicle to defendant Morris knowing of his prior accident history and his failure to wear corrective lenses which plaintiff claimed had been prescribed. Defendants' theory of the case was that plaintiff's decedent, Elizabeth Terrell, who had stopped on the side of the road, pulled her vehicle into the path of Morris' truck and that he could not avoid hitting her. Though expert and eyewitness testimony supported both versions, the jury determined that plaintiff's decedent was one hundred percent responsible for the accident and, accordingly, rendered judgment for defendants.

During the jury selection, defendants exercised a peremptory challenge to exclude the sole black juror from the venire.[1] The court excused the juror, and the others challenged peremptorily, but asked that they remain temporarily in the courtroom.[2] Plaintiff's counsel requested permission to approach the bench and, in the bench conference that followed, objected to the challenge of the black juror. Upon hearing the objection, the court required each counsel to "detail the reasons for [the] challenges." After the written reasons were passed to the court,[3] the court, in the following manner, called the excluded juror to the bench and informed the juror that he had a right to serve on the jury:

> With the law changing daily, it's my opinion that all that—in any situation where a member of the jury is excused, that is the juror's right as a member of the fair community, that he can continue to sit on the jury, but it is your right.

The juror responded: "I'd rather not exercise that right." The court thanked and excused the juror without further comment on the record.

An all-white jury was seated. During the plaintiff's case in chief, plaintiff offered evidence of defendant Morris' driving record to establish that defendant Porter Brown had negligently entrusted the responsibility of operating the truck to defendant Morris. Plaintiff proffered that since 1981, defendant Morris had been involved in nine accidents, at least two of which involved rear-end colli-

sions. The court disallowed the evidence, finding that its admission would be more prejudicial than probative. After defendants offered evidence that Morris was conscientious about his truck's condition and that he and other drivers were routinely advised to be careful, plaintiff again attempted to introduce the evidence of the prior accidents. The court disallowed the introduction in rebuttal as well.

On appeal, plaintiff attacks the exclusion of the juror and the evidence and alleges that both entitle plaintiff to a new trial. Plaintiff also contends that the venue of the new trial should be transferred. The Court of Appeals disagreed with plaintiff on each issue and affirmed the trial court's judgment for defendants.

On the first issue, the intermediate court enumerated the three interests implicated in the Supreme Court cases: the juror's equal protection rights; the litigant's equal protection rights; and the judicial system's interest in maintaining public confidence. In affirming, the appellate court held that:

1. the trial court protected the juror's right by offering him the right to serve;

2. a civil litigant's right to a jury chosen in a nondiscriminatory manner is less compelling than a criminal defendant's whose liberty interests are implicated;[4]

3. the judicial process was not affected since the judge offered the juror the opportunity to serve.

1. Some courts have deemed the exclusion of the sole minority member of the venire as sufficient to establish a prima facie case. We need not reach that issue on these facts. *See State v. Ellison,* 841 S.W.2d 824, 827 (Tenn.1992); *Faison v. Hudson,* 243 Va. 397, 417 S.E.2d 305, 308 (1992); *In re of A.D.E.,* 880 S.W.2d 241, 243 (Tex.App.1994); *but see United States v. Sangineto–Miranda,* 859 F.2d 1501, 1521 (6th Cir.1988).

2. It appears from the record that the judge routinely had the excused jurors remain until a jury was seated at which time he excused them all with instructions about future service.

3. Defendants' challenge slip indicates "Client and counsel did not feel juror would be impartial. Same 'feeling' rather than opinion for ex-

clusion of juror.... Body language and gut reaction."

4. Nothing in *Edmonson* suggests that the principles are to be shown less solicitude in civil cases than in criminal ones. Particularly, once racial discrimination is found, it must be eradicated regardless of the nature of the case or who raises the issue. Discrimination in the justice system, in its civil or criminal components, invites disrespect and cannot be tolerated. Treating one less seriously than the other would only increase the disrespect. The litigant and the juror share a common interest in eliminating discrimination from the judicial system. *Osmulski v. Becze,* 638 N.E.2d 828 (Ind.App.1994); *Martins v. Connecticut Light and Power, Co.,* 35 Conn.App. 212, 645 A.2d 557, 565 (1994). Judges have a common obligation to assure that it does not go unanswered.

Finally, the court held that the trial judge had not abused his discretion in offering the juror the choice of serving or not serving on the jury. On the evidentiary issue, the court likewise affirmed the trial judge.

We have granted review to consider this important constitutional issue and to discuss the appropriate procedures for trial judges faced with juror challenges which may run afoul of the constitution. While we agree with the Court of Appeals' enumeration of the three competing interests involved in these cases, we disagree with their conclusions. First, we note that in Tennessee, jury service is a legal responsibility as well as a right. Secondly, we disagree that the constitutional principle of equal protection is subject to stricter standards in criminal cases. Finally, we disagree that the judicial process was not affected by the court's "offer" to allow the juror to serve in this case. For those reasons and the others set forth, we reverse and remand for a new trial. As a result of the remand of this case for a new trial, we will address the evidentiary issues as well.

## II. Issues

### A. Excluded Juror

Since as early as 1880, it has consistently been recognized that racially-based juror exclusions affect and injure the integrity of the justice system. *See e.g., Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880); *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); *Hollins v. Oklahoma,* 295 U.S. 394, 55 S.Ct. 784, 79 L.Ed. 1500 (1935) (per curiam); *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946); *Carter v. Jury Comm'n of Greene County,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970). For over one hundred years, discrimination in the jury selection process has constituted a federal criminal

offense. 18 U.S.C. § 243 (1969). More recently, in a series of cases, the United States Supreme Court has recognized that the injury inherent in discriminatory juror selection taints the judicial process and "extends beyond that inflicted on the [litigant] and the excluded juror to touch the entire community." *Batson v. Kentucky,* 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986). The exclusion "undermine[s] public confidence in the fairness of our system of justice." *Id.* at 87, 106 S.Ct. at 1718.

Thus, in *Batson v. Kentucky,* the Court held that a criminal defendant could challenge the exclusion of racial minorities on equal protection grounds. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There a black criminal defendant challenged the prosecution's use of peremptory challenges to exclude all the black members of the venire. The United States Supreme Court held that the equal protection clause guarantees defendant that the State will not exclude members of defendant's race from the venire on account of race. *Id.* at 97–98, 106 S.Ct. at 1723–24.

■■■ The *Batson* Court outlined the appropriate procedure for raising the equal protection challenge. First, defendant must establish a prima facie case of purposeful discrimination. Defendant "may make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 94, 106 S.Ct. at 1721. This showing may include proof of systematic exclusion, substantial underrepresentation on the venire, or the selection methods and results solely in the present case. *Id.* at 95, 106 S.Ct. at 1722.[5] As to the purposeful requirement, defendant is entitled to rely on the nature of the peremptory challenge—that it permits " 'those to discriminate who are of a mind to discriminate.' " *Id.* at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892,

---

5. In *Batson,* the Court stated that a finding of purposeful discrimination, based solely on the facts in the present case, would require proof that defendant was a member of a cognizable racial group, and second, that the prosecutor has excluded members of that group from the venire. *Batson v. Kentucky,* 476 U.S. at 96, 106 S.Ct. at 1722–23. Those requirements, though present in the case before us, were eliminated in *Powers* and *Edmondson.*

97 L.Ed. 1244 (1953)). In the end, defendant must establish that a consideration of all the relevant circumstances raises an inference of purposeful discrimination. *Id.* at 97, 106 S.Ct. at 1723.

■ Once defendant makes a prima facie showing, the state is required to demonstrate a neutral explanation for the exclusion. *Id.* The explanation need not reach the level of a "for cause" challenge, but neither may it be so scant as to rely on assumed bias on the part of the excluded juror because of race or to conclusively assert universal good faith on the part of the prosecutor. *Id.* at 97–98, 106 S.Ct. at 1723–24. If a race-neutral explanation is given, the trial court must determine whether, given all the circumstances, defendant has established purposeful discrimination. If so, the juror may not be excluded. After reviewing these standards, the *Batson* Court remanded the case to allow the trial court to evaluate the facts.

■ While the holding in *Batson* focused on defendant's rights, it also referenced the negative effects that race-based exclusions have on the excluded juror and the community. *Id.* at 87–89, 106 S.Ct. at 1718–19. Five years later, in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court expanded *Batson* in a case that emphasized the importance of the excluded juror's rights. In *Powers,* a white defendant was deemed to have third party standing to challenge the exclusion of a black juror. "[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civil life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race." *Powers v. Ohio,* 499 U.S. at 409, 111 S.Ct. at 1370. Further, "race is irrelevant to the defendant's standing to object to the discriminatory use of peremptory challenges." *Id.* at 416, 111 S.Ct. at 1373.

■ The same year, the Court applied the *Batson* rationale to civil cases holding that "[r]acial discrimination has no place in the courtroom, whether the proceeding is civil or criminal." *Edmonson v. Leesville Concrete Co., Inc,* 500 U.S. 614, 630, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991). Since "[t]he selection of jurors represents a unique function delegated to private litigants by the government and attributable to the government for purposes of invoking constitutional protections . . . ," *id.* at 627, 111 S.Ct. at 2086, the Court found state action in the civil action forum. Therefore, a private litigant's use of peremptory challenges in a civil case constitutes state action; it is unconstitutional to use peremptory challenges to exclude jurors because of race.

Additionally in *Edmonson* the Court reiterated its concern for the system itself:

> Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality. . . . To permit racial exclusion in this official forum compounds the racial insult inherent in judging a citizen by the color of his or her skin.

*Id.* at 628, 111 S.Ct. at 2087 (citations omitted).

■ As a result of the principles announced in this triad of cases, we know that jurors, as well as civil and criminal litigants, regardless of their race, have standing to contest racially-based peremptory challenges. We know that the party raising the issue must establish a prima facie case of purposeful discrimination and that, upon such a showing, the burden shifts to allow the opposing party an opportunity to offer a neutral explanation for the exclusion. Finally, we know that among the interests which the cases aim to protect is the integrity and respect for the justice system.

While speaking profoundly about the import of the constitutional principles in these

cases, the Supreme Court declined to offer practical guidance to judges and lawyers who must apply the abstract principles to the practical reality of the courtroom. The Court concluded, for example, that "[i]t remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice." *Powers v. Ohio,* 499 U.S. at 416, 111 S.Ct. at 1374; *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. at 631, 111 S.Ct. at 2089 ("we leave it to the trial courts in the first instance to develop evidentiary rules for implementing our decision"); *Batson v. Kentucky,* 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24.

Perhaps that absence of practical guidance from the high Court combined with the relative newness of *Batson* challenges in civil cases and the numerous unresolved procedural issues produced the unusual posture of this case. By virtue of the procedure used, the trial judge announced that the juror was excluded before counsel had an opportunity to object. After counsel objected, the court required counsel to write down the reasons for exclusion. Then, upon reflection, the court invited the juror to "unexcuse" himself. He, quite understandably, declined.

■ Under *Batson,* in addition to objecting to the peremptory challenge, counsel must make a prima facie showing of purposeful discrimination. As guidance on this issue, the Supreme Court stated that all relevant circumstances should be considered, including any pattern of strikes, questions and statements during voir dire, and the recognized inference that peremptory challenges create an atmosphere which allows discrimination. *Batson v. Kentucky,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24. In *Edmonson,* the Court reiterated that this same approach applied in the civil context. *Edmonson v. Leesville Concrete Company, Inc.,* 500 U.S. at 631, 111 S.Ct. at 2088–89. Following the showing, the burden shifts to allow counsel to explain the legitimate reason for the challenge. Then, objecting counsel must be given an opportunity to show that the reason given is pretextual or inadequate. Thereafter, the court must evaluate all the facts and circumstances to determine whether racial exclusion has been demonstrated.

The crux of the Supreme Court's totality approach is the Court's reliance on and confidence in the trial court to make these fact-based determinations:

> We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances ... create[ ] a prima facie case of discrimination against black jurors.

*Batson v. Kentucky,* 476 U.S. at 97, 106 S.Ct. at 1723. Given the variety of jury selection methods, the Court made "no attempt to instruct [trial] courts how to implement [the] holding...." *Id.* at 99 n. 24, 106 S.Ct. at 1725 n. 24.

■ Thus, it remains for the trial judge to devise a method to accomplish the mandates of the cases. In our supervisory role over our state trial courts, we are obliged to assist our trial judges in devising voir dire methods which allow counsel to object to potential peremptory challenges before the court announces the exclusion of the juror. Once an objection is voiced, the court should require the objecting party to detail how a prima facie case of purposeful discrimination has been established. The judge should state clearly on the record, outside the jury's presence, the facts relied upon for finding the presence or absence of a prima facie showing. If, and only if, the judge finds that a prima facie showing has been made, then the party seeking to exclude the juror must be given an opportunity to offer neutral, nondiscriminatory explanations for the exercise of the challenge. Thereafter, the judge must determine, based on all the evidence, whether purposeful discrimination has been established.

Here, there is no record of previous systematic exclusions, or underrepresentations, in the venire. Defendants excused the sole

black member of the venire. The voir dire of the excused juror is not revealing, but is somewhat cryptic. While the procedure used by the trial judge created difficulties, we must conclude that the trial judge determined that a prima facie case of purposeful discrimination had been established. Otherwise, the court would not have required defendants to explain the challenge.[6]

■ Additionally, and again in the face of a somewhat skewed procedure, we must conclude that the trial judge rejected defendants' explanation[7] and concluded that plaintiff had established purposeful discrimination based on the totality of the circumstances. Otherwise, the judge would not have been authorized to disallow the exercise of the challenge and invite the juror to return to the panel. *See* Tenn.Code Ann. § 22–3–105(a) (1994 Repl.) (right to four peremptory challenges in civil cases). Thus, implicit in the judge's actions and his order is the finding that defendants' exercise of the peremptory challenge to exclude the minority juror violated the equal protection clause.

■ Having concluded that the trial judge found purposeful discrimination, we must determine whether the trial judge erred in offering the juror the choice of serving or not serving on the jury. We conclude that offering the juror the choice of serving was error. In Tennessee, all adult citizens not excluded by law are required to serve on a jury if summonsed and selected. Tenn.Code Ann. § 22–1–101 (1994 Repl.). To allow a juror to decide whether he or she complies with the statutory requirement would potentially destroy the jury system.

Jurors summonsed for duty or called to the box could simply decline to serve.

■ Additionally, allowing the juror to choose to opt out of service would elevate the juror's interest—a viable, but not exclusive interest—above the interests of the litigants, the community, and the preservation of the integrity of the system. Albeit with varying degrees of emphasis, the Supreme Court repeatedly echoed the trilogy of rights it sought to protect. While the litigant's rights were important, they were not superior to the jurors. Neither were the juror's rights more important than the litigants. The integrity of the system, the sanctity of jury service, the perception of the community were interests equally important to those of the litigant and the juror. Guided by the Court's decisions, we, therefore, conclude that the juror's rights cannot subvert the equally significant rights of the litigant and the aura of the system. Therefore, if a court finds that a party has engaged in purposeful racial discrimination in the exercise of a peremptory challenge, the juror cannot negate the constitutional injury by agreeing not to serve under circumstances in which a juror is not otherwise entitled to decline to serve.

■ The challenged juror in Tennessee cannot excuse her or himself. If no statutory exemption applies, a juror is competent and must serve unless challenged peremptorily or for cause. Tenn.Code Ann. § 22–1–102–106 (1994 Repl.). A racially discriminatory peremptory challenge is a nullity. Once the court concluded that defendants' challenge was racially discriminatory, the trial judge was required to return the challenged

**6.** *See Faison v. Hudson,* 243 Va. 397, 417 S.E.2d 305, 308 (1992) ("[i]mplicit in the trial court's ruling ... was a finding that Faison had established a *prima facie* case").

**7.** We are mindful of the meager standard established by the United States Supreme Court in *Purkett v. Elem,* — U.S. —, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), for racially neutral explanations. There the Court held that the explanation need not be persuasive nor plausible. So long as discrimination was not inherent in the explanation, the reason will be accepted as race

neutral. Thus, the Court explained "[w]hat is meant [in *Batson* ] by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett v. Elem,* — U.S. at —, 115 S.Ct. at 1771, 131 L.Ed.2d at 840 (citing *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion)). Given the trial judge's findings here, and the presumption of correctness which attaches on appeal, we do not determine whether the proffered explanation in this case was race neutral.

juror to the panel or invoke some other remedial method.[8] The juror had no right to decline to serve. The judge had no right to honor that declination.

Once discrimination in jury selection has occurred, the harm is done. The system, the litigant, and the juror have already sustained injury.

> The litigants are harmed by the risk that the prejudice which motivated the discriminatory selection of the jury will infect the entire process. The community is harmed by the state's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our justice system that state-sanctioned discrimination in the courtroom engenders.

*J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, ——, 114 S.Ct. 1419, 1427, 128 L.Ed.2d 89 (1994). Offering the right to serve does not remove the taint; enforcing the right does.

■ In future cases, judges must utilize procedures to assure that the process is carefully followed. First, the court must provide an opportunity to counsel to object to potential peremptory challenges before the court announces the exclusion and excuse of challenged jurors. This procedure may be outlined before trial, detailed in the pretrial order, or described in the court's local rules. For example, counsel could be required to submit challenges in writing to opposing counsel before presenting them to the clerk or judge. Prior to reading the names of the excluded jurors, the judge might inquire as to objections or might simply pause to allow objections. Counsel desiring to contest a challenge on discrimination grounds could do so at the bench or in a jury-out conference.

■ Secondly, after the objection is raised, the court must ascertain whether a

prima facie case of purposeful discrimination has been established. This proffer or discussion should also occur outside the presence of the jury. If the court finds that a prima facie case has been established, the court must give the opposing party the opportunity to rebut the prima facie case by establishing a neutral reason for the exercise of the challenge.[9] The objecting party must be allowed to respond as to why the reason is pretextual or inadequate. Thereafter, the court must determine, by considering all the facts and circumstances, whether the totality of the circumstances support a finding of purposeful discrimination. "The ... ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem,* —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

■ The trial judge must carefully articulate specific reasons for each finding on the record, i.e., whether a prima facie case has been established; whether a neutral explanation has been given; and whether the totality of the circumstances support a finding of purposeful discrimination. The trial court's factual findings are imperative in this context. On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous. *See In re A.D.E.,* 880 S.W.2d 241, 243 (Tex.App.1994). Thus, specificity in the findings is crucial.

■ If the court concludes that a prima facie case has not been established, no explanation may be required. If the court, however, determines that a prima facie case was established but that the explanation is sufficient, or that the totality does not support a finding of purposeful discrimination, the juror should be excluded and the strike counted against the excluding party. If the court finds that the totality of the circum-

---

8. In *Batson,* the Court recognized reinstatement as one curative measure, but declined to say whether "it is more appropriate ... for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Bat-*

*son v. Kentucky,* 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24 (citations omitted).

9. *See Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

stances warrant a finding of purposeful discrimination, the juror should remain, his or her name should not be announced, and the excluding party should be restored to the peremptory challenge. Alternatively, if the court finds that purposeful discrimination has been established, the court can exclude the entire venire and begin selection with a new panel. In any event, having found purposeful discrimination based on the totality of the circumstances, the court cannot allow the exercise of the challenge. To do so not only permits racial discrimination in jury selection, it endorses the wrong with the imprimatur of the court. Therefore, plaintiff is entitled to a new trial in this case.

### B. Excluded Evidence

 Since this case must be retried, we will address the other issues raised by plaintiff. Plaintiff's allegations included a claim of negligent entrustment against defendant Morris' employer, Porter Brown Limestone Company. A claim of negligent entrustment requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another. Restatement (Second) of Torts § 390 (1964). Thus, one who entrusts another with an automobile knowing of the other's incompetence may be held liable for injuries proximately caused by the negligent use of the automobile. *V.L. Nicholson Const. Co. v. Lane*, 177 Tenn. 440, 150 S.W.2d 1069, 1070 (1941).

From 1981 until the time of the accident in this case, defendant Morris had been involved in nine accidents, including at least two rear-end collisions. Plaintiff offered evidence of defendant Morris' prior accidents to establish that defendant Porter Brown was negligent in entrusting the vehicle to such a driver. The trial judge agreed that the evidence was probative on the essential elements of the claim, but excluded it under

Rule 403, finding that it was "so good that it's prejudicial."

 In their case, defendants introduced testimony from three company officials that, at safety meetings, the company frequently cautioned defendant Morris and others to be careful on the road. The witnesses also testified that defendant Morris was conscientious in the care and maintenance of his truck. Additionally, defendants offered the testimony of a friend of defendant Morris' who had observed defendant Morris avoid a rear-end collision moments before the fatal accident in this case. Plaintiff did not object to the admission of the evidence, but later argued that this testimony opened the door for the introduction of the previously excluded prior accident evidence.[10] The trial judge disagreed and abided by his prior ruling excluding the evidence of prior accidents.

 Plaintiff's theory of the case was that defendant Morris hit the Terrell vehicle first from behind, then on the side after the vehicle skidded around. It was plaintiff's position that defendant, due to failing eyesight and age, failed to control his truck. Plaintiff further alleged that defendant Porter Brown knew of defendant Morris' poor eyesight, knew he did not wear glasses, knew of his prior accidents, and nevertheless entrusted him to drive the truck. On that cause of action, plaintiff was required to prove Morris' prior incompetence as a driver and Porter Brown's knowledge of it. Morris' prior driving record was essential to proving that claim. As such, the prior specific acts were a requisite element of the cause of action and admissible. *See* Tenn.R.Evid. 405(b). While the proof offered was admittedly strong and damaging, plaintiff had no other means to prove the essential element of negligent entrustment. Therefore, its relevance and probativeness was substantial. As is often the case with extremely persuasive evidence, its introduction was likewise preju-

10. Obviously plaintiff was required to object to the evidence at the time of its admission in order to preserve its introduction as error. Tenn. R.Evid. 103(a)(1); *see e.g., State v. Coker*, 746

S.W.2d 167 (Tenn.1987); *State v. Bennett*, 549 S.W.2d 949 (Tenn.1977); *In re Estate of Armstrong*, 859 S.W.2d 323 (Tenn.App.1993).

dicial. We disagree, however, with the trial judge's conclusion that the probative value was "substantially outweighed by the danger of unfair prejudice." Tenn.R.Evid. 403. The plaintiff should have been allowed to introduce the evidence in the case in chief. On retrial, upon introduction, the trial judge should give a carefully detailed limiting instruction advising the jury as to the use of the evidence.[11]

Rules 404 and 406 of the Tennessee Rules of Evidence guide our resolution of the evidentiary matters raised by defendant Porter Brown's proof. First, Rule 404(a) excludes evidence of conduct on one occasion for the purpose of establishing conduct in conformity with that conduct on another occasion. Tenn.R.Evid. 404(a). While such evidence may be admissible for some other purpose, Tenn.R.Evid. 404(b), proof of specific instances of conduct are only admissible with permission on cross-examination, Tenn.R.Evid. 405(a), or when character is an essential element of a claim or defense. Tenn.R.Evid. 405(b).

■ As to the evidence regarding safety meetings, we agree that this evidence was relevant to rebut plaintiff's claim that defendant Porter Brown did not conduct regular safety meetings as required by trucking regulations. As such, it addressed a material issue, was not offered as propensity evidence, and was admissible.

■ We view the evidence of Morris' conscientiousness about his truck differently. Plaintiff did not allege that defendant Morris did *not* take care of his vehicle. This evidence had no legitimate purpose other than to attempt to persuade the jury that defendant Morris was a careful man. As such it

runs afoul of Rule 404(b) and is inadmissible.[12]

■ Similarly, the testimony of Roy Head that defendant Morris had avoided an accident moments earlier causes us concern. While defendant Porter Brown proffered that the evidence was to rebut plaintiff's claims that defendant Morris had poor eyesight, no limiting instruction was given. The evidence was insufficient to rise to the level of habit evidence, Tenn.R.Evid. 406, but invited the jury, again, to imply the trait of carefulness.

■ While not admissible to imply conduct in conformity with the trait of carefulness, the evidence might be admissible if, as defendants suggest, it is offered for another purpose. Tenn.R.Evid. 404(b). The purpose must be material, and the probative value of the evidence must not be outweighed by the danger of prejudice. *Id.* When a court admits evidence for some "other purpose" under Rule 404(b), it generally should be accompanied with a limiting instruction explaining to the jury the permissible use of the evidence.

Even if the evidence addresses some legitimate other purpose, the judge must determine whether the type of evidence offered is appropriate. Tenn.R.Evid. 405. Rule 405 disallows the use of specific instances of conduct in cases in which character traits are admissible except with permission on cross-examination, Tenn.R.Evid. 405(a), or when the character trait is an essential element of the claim or defense. Tenn.R.Evid. 405(b). Here, character is not an essential element. Further, the evidence was elicited on direct examination. Consequently, the specific prior instances of defendant Morris' conduct should not be admitted if challenged.

---

11. An appropriate instruction, for example, would read as follows: You have heard evidence regarding prior accidents involving Mr. Morris while employed by Porter Brown. You may consider that evidence only as it relates to plaintiff's claim that Porter Brown entrusted Mr. Morris to drive their truck even though they knew he was an incompetent driver. In other words, you may consider that evidence only on the negligent entrustment claim against Porter Brown. Do not

consider it for any purpose whatsoever in your evaluation of whether Mr. Morris' negligence was the proximate cause of this accident.

12. On retrial, should some legitimate other purpose for the admission of this evidence arise, the court should, nonetheless, upon request, conduct a 404(b) hearing before its admission, and consider giving a limiting instruction.

## C. Change of Venue

Plaintiff requests this Court to grant a change of venue in the event of retrial. This issue cannot be determined by this Court as it was raised for the first time in the intermediate appellate court. A request for change of venue must be addressed to the trial court. Tenn.Code Ann. § 20–4–201 (1995 Supp.).

## III. Conclusion

For all the reasons set forth, we reverse the judgment of the Court of Appeals and the trial court in this case and remand for a new trial. Costs are taxed to the appellees.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.