IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2008 Session

## STATE OF TENNESSEE v. MARCUS ANTONIO LOGAN

Direct Appeal from the Circuit Court for Tipton County
No. 5574    Joseph H. Walker III, Judge

No. W2008-00736-CCA-R3-CD  - Filed March 25, 2009

The defendant, Marcus Antonio Logan, was convicted by jury of one count of delivering less than .5 grams of a Schedule II controlled substance (cocaine), a Class C felony.  Thereafter, he was sentenced to fifteen years imprisonment as a career offender.  On appeal, the defendant presents three issues for review: (1) whether the trial court properly overruled the defendant's objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) whether the jury should have been instructed on the state's failure to preserve evidence; and (3) whether the evidence was sufficient to support the conviction.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David H. Welles and Thomas T. Woodall, JJ., joined.

Lyle A. Jones (on appeal), Somerville, Tennessee, and C. Michael Robbins (at trial), Covington, Tennessee, for the appellant, Marcus Antonio Logan.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., P. Neal Oldham and Cameron Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The following evidence was presented at the defendant's trial.  Tammy Landrum testified that she worked with the Covington Police Department as a confidential informant.  According to Ms. Landrum, she was a former drug user and her boyfriend had gotten himself into some trouble. She did not want her kids addicted to drugs so she decided to "straighten up."  Ms. Landrum said that she started purchasing drugs for the police about two months prior to purchasing cocaine from the defendant in October of 2006.

Ms. Landrum testified that on October 6, 2006, she met Mark Daugherty, a police officer with the Covington Police Department, at a secure location to discuss the initiation of an undercover drug purchase in the Frye Cove Apartments located in Tipton County. Officer Daugherty equipped her with an audio/video recording device and gave her twenty dollars to purchase drugs.

Ms. Landrum testified that she drove alone to the apartment complex and approached three men who were hanging around a vehicle in the parking lot. She asked them for a "twenty of rock cocaine." One of the three men gave her what appeared to be a rock of crack cocaine in exchange for the twenty dollars. Ms. Landrum said that the cocaine and money were exchanged simultaneously and the exchange was quick. After the exchange, Ms. Landrum walked back to her truck and drove out of the parking lot. As she exited the parking lot, she pulled ahead of Officer Daugherty and he followed her back to the secure meeting place where she gave him the cocaine. Ms. Landrum identified the defendant at trial as the individual who took part in the exchange. A videotape of the exchange was introduced into evidence and played to the jury. Ms. Landrum said that she had recently viewed the videotape and it was an accurate representation of what happened.

On cross-examination, Ms. Landrum acknowledged that she got paid forty dollars for being a confidential informant in the case. She also acknowledged that she was not searched by a police officer prior to the drug purchase or after the exchange took place. Ms. Landrum also acknowledged that the videotape did not pick up an audible response by the defendant during the exchange. She further acknowledge that while the videotape showed the defendant with his arm extended, it did not actually show the crack cocaine in the defendant's hand.

Special Agent Gabriel Craig of Tennessee Bureau of Investigation (TBI) testified that he tested and examined the substance provided by Officer Mark Daugherty of the Covington Police Department. Agent Craig stated that the substance sent for testing contained .1 grams of cocaine. On cross-examination, Agent Craig agreed that he had no idea how Officer Daugherty came into possession of the cocaine.

Officer Mark Daugherty testified that he was employed with the Covington Police Department. He recalled that he worked with Tammy Landrum, a confidential informant, during a controlled drug purchase in October of 2006, which led to the defendant's arrest. Officer Daugherty stated that he equipped Ms. Landrum with an audio/video recording device and money to fund the purchase of drugs. Officer Daugherty recalled that he observed Ms. Landrum as she left the Fry Cove Apartments and followed her back to the original meeting place. Upon arrival, Ms. Landrum handed him what appeared to be crack cocaine. Officer Daugherty said that he sealed the substance in an evidence bag, assigned it a case number, and delivered it to the TBI crime laboratory.

Officer Daugherty testified that on December 16, 2006, the defendant was identified from the videotape as the man who sold Ms. Landrum the crack cocaine. In March 2007, the defendant was charged. Officer Daugherty stated that the crack cocaine was destroyed on June 5, 2007. He explained that when the cocaine had been taken into custody, the defendant's identity was unknown so the evidence bag was labeled "unknown." As a result, the cocaine was inadvertently destroyed prior to trial when Officer Daugherty conducted a court-approved disposition of various illegal substances. Officer Daugherty denied that he destroyed the cocaine in an attempt to keep it from

being seen by the jury. On cross-examination, Officer Daugherty acknowledged that he did not search Ms. Landrum prior to sending her out to purchase drugs.

Following deliberation, the jury found the defendant guilty of one count of delivering less than .5 grams of a Schedule II controlled substance (cocaine), a Class C felony. Subsequently, he was sentenced as a career offender to fifteen years confinement.

## ANALYSIS

### I. Peremptory Challenges

The defendant argues that the trial court erred in allowing the state to use its peremptory challenges to exclude two African-Americans from the jury venire despite the defendant's objection under *Batson v. Kentucky*, 476 U.S. 79 (1986).

Under the Equal Protection Clause of the Fourteenth Amendment, neither the state prosecutor nor the defendant may exercise a peremptory challenge to remove a prospective juror solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79 (1986); *see also Georgia v. McCollum*, 505 U.S. 42, 59 (1992). In *Batson v. Kentucky*, the United States Supreme Court established a three-step process for evaluating alleged discrimination in jury selection. First, the opponent of the peremptory challenge must establish a prima facie case of purposeful discrimination "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94; *see also Johnson v. California*, 545 U.S. 162, 169 (2005). Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the challenge. *Batson*, 476 U.S. at 97-98. The race-neutral explanation need not be persuasive or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Unless purposeful discrimination is inherent in the explanation, the reason offered will be deemed race-neutral. *See id.* Finally, if the proponent provides a race-neutral explanation, the trial court must then determine, from all the circumstances, whether the explanation is a pretext and whether the opponent of the peremptory challenge established purposeful discrimination. *See Batson*, 476 U.S. at 98; *see also Miller-El v. Dretke*, 545 U.S. 231, 239 (2005). If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded. *See State v. Hugueley*, 185 S.W.3d 356, 369 (Tenn. 2006); *Woodson v. Porter Brown Limestone Co., Inc.*, 916 S.W.2d 896, 903 (Tenn. 1996).

When determining the existence of a *Batson* violation, the trial court must carefully articulate specific reasons for each finding on the record. *Woodson*, 916 S.W.2d at 906. "On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous." *Id*.

The record indicates that during the voir dire, the state tendered its peremptory challenge against two potential African-American jurors, Mrs. Frazier and Mr. Lee. The defense objected, arguing that the state had used its peremptory challenges to strike African-Americans in violation of *Batson*. However, the defense did not elaborate on its *Batson* objection. The state submitted that it challenged Mrs. Frazier because she indicated that she had known the defendant when he was a child and was well-acquainted with certain members of the defendant's family including his

grandmother, mother, brothers and sisters. Mrs. Frazier had also responded to the state's questioning as follows:

> State Prosecutor: And it could be that the State will present . . . evidence that would satisfy you that [the defendant] did in fact deliver cocaine . . . . Would it make it more difficult for you in reaching a fair decision in this matter . . . to know that you might have to see [the defendant's] grandmother or mother or siblings sometime next week? Would that make it more difficult for you as a juror in this case?
>
> Juror Frazier: Yes, sir.
>
> State Prosecutor: Do you think that because of that, that you might not be as fair as you could be to the State of Tennessee in judging the facts and following the law in the case?
>
> Juror Frazier: Yes.
>
> State Prosecutor: All right I appreciate your honesty, Ms. Frazier.

Mrs. Frazier was also questioned by defense counsel. She indicated that, although she had attended the defendant's mother's funeral several months ago, she had not seen the defendant in over fifteen years and was no longer in social contact with the defendant's family. Mrs. Frazier also indicated that she would consider all the evidence and believed she could be fair in weighing the evidence.

With regard to Mr. Lee, the state submitted that it challenged him based on his difficulty in understanding some simple questions posed to him, and his answers to the jury questionnaire. In his questionnaire, Mr. Lee had indicated that members of his extended family had been convicted of crimes.

In ruling on the peremptory challenges, the trial court found that there was no prima facie case of discrimination shown by the defense. The trial court further found that the state had offered race-neutral reasons for challenging Mrs. Frazier and Mr. Lee.

Upon review, we are unconvinced that the defendant established a prima facie case of purposeful discrimination. Standing alone, the simple fact that the challenged prospective jurors were African-American does not constitute prima facie evidence of purposeful discrimination. Furthermore, we conclude that the basis for the state's use of its peremptory challenges against these two potential jurors was sufficiently race-neutral to dispel any indicia of purposeful discrimination. As the record reflects, the state challenged Ms. Frazier because of her acquaintance with members of the defendant's family and her initial indication that she could not be fair. The state challenged Mr. Lewis based on his difficulty understanding the questions posed to him during voir dire and his indication that several family members had been prosecuted for crimes. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral.

*Purkett*, 514 U.S. at 769. Indeed, what *Batson* means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. *Id.* (citations omitted). Accordingly, we discern no error in the trial court's denial of the defendant's *Batson* challenge. This issue is without merit.

## II. Failure To Instruct Jury on State's Duty to Preserve Evidence

The defendant argues that his "right to a fair trial was prejudiced by trial counsel's failure to request jury instruction 42.23[1] regarding the preservation of evidence."[2]

Generally, a defendant complaining of an instruction being omitted must make a special request that the instruction be given or object to the omission. *See* Tenn. R. Crim. P. 30(a), (b). Otherwise, such failure waives the issue for appellate review. *See State v. Robinson*, 146 S.W.3d 469, 509 (Tenn. 2004); *State v. Haynes*, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986). Upon review of the record, we note that the defendant was made aware of the destruction of the cocaine prior to trial, yet the defendant failed to make a special request that instruction on the "Duty to Preserve Evidence," be given or object to the omission of this particular instruction. Accordingly, the defendant has waived any alleged error regarding a jury instruction on the preservation of evidence. *See Robinson*, 146 S.W.3d at 509 ("alleged omissions in the jury charge must be called to the trial judge's attention or be regarded as waived."); *see also* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The defendant is not entitled to relief on this issue.

## III. Sufficiency of Evidence

The defendant contends that the state failed to present sufficient evidence to establish that he had given Ms. Landrum cocaine in exchange for money. As support for his contention, the defendant argues that there was no cocaine shown on the video and that the cocaine was not presented to the jury for inspection. The defendant asserts that there was no evidence other than the testimony of Ms. Landrum that he possessed any cocaine. He further asserts that Ms. Landrum's testimony is not credible because she was a former drug user, she got paid to buy drugs, and she was not searched prior to the alleged drug buy.

---

[1] T.P.I. –Crim. 42.23 states the following in relevant part:

> The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. . . . If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are an issue and the production of which would more probably than not be a benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

[2] While the defendant's argument nebulously touches upon the ineffective assistance of counsel, we decline to address this issue on appeal as no citation to the record, citation to authority, or argument is presented regarding this issue. We also note that no findings of fact were made by the trial court regarding ineffective assistance of counsel and our consideration of the issue would be premature and preclude post-conviction proceedings.

We begin our review by reiterating the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

To establish the defendant's guilt of the offense, the state had to prove that the defendant knowingly delivered a Schedule II controlled substance. *See* Tenn. Code Ann. § 39-17-417(a)(2), (c)(2)(A) (2003). "Deliver" or "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id*. § 39-17-402(6).

After considering the evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found the defendant guilty of delivering less than .5 grams of a Schedule II controlled substance (cocaine). At trial, Ms. Landrum testified that the defendant was the individual who sold her crack cocaine for twenty dollars. Officer Daugherty testified that he received the substance purchased by Ms. Landrum shortly after the transaction took place. He testified that he sent the substance to the TBI for analysis. Agent Craig testified that the substance sent for testing contained .1 grams of cocaine. The defendant's sufficiency argument essentially amounts to a challenge to the jury's credibility determinations. The weight and credibility of the state witnesses' testimony and the reconciliation of conflicts in the testimony, if any, are matters entrusted exclusively to the trier of fact. Here, the jury by its verdict accredited the testimony of the state witnesses. Because the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt, we affirm the judgment.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

-6-

_____
J.C. McLIN, JUDGE