# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 17, 2013

## STATE OF TENNESSEE v. BOBBY D. PARKER

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-66425      David Bragg, Judge**

---

**No. M2012-01325-CCA-R3-CD - Filed September 26, 2013**

---

Following a jury trial in the Circuit Court of Rutherford County, Defendant, Bobby D. Parker, was convicted of three counts of attempted aggravated robbery and one count of attempted aggravated burglary. Defendant was sentenced as a career offender for each conviction, with sentences of 15 years imposed for each attempted aggravated robbery and 12 years for the attempted aggravated burglary. The trial court ordered two of the 15-year sentences to be served concurrently with each other but ordered them to be served consecutively to the third attempted aggravated robbery sentence. The attempted aggravated burglary sentence was ordered to be served consecutively to the other sentences, for an effective sentence of 42 years. In this appeal, Defendant raises two issues: (1) the trial court committed reversible error by overruling his objection to a peremptory challenge exercised by the State, and (2) the trial court imposed an excessive sentence by applying improper enhancement factors. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, Jr. and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Melton, District Public Defender; and Russell N. Perkins, Assistant Public Defender, Murfreesboro, Tennessee, for the appellant, Bobby D. Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; Shawn Puckett, Assistant District Attorney General; and Allyson S. Abbott, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Under the particular circumstances of this appeal, a detailed recitation of the facts presented at trial is not necessary. However, the criminal acts of defendant in this spree led from Rutherford County to Williamson County, where Defendant was also charged with additional crimes related to the Rutherford County charges. Defendant pled guilty to eight various crimes in Williamson County, leaving to the trial court to determine the length and manner of service of sentences imposed. Defendant appealed the Williamson County judgments to this Court. The facts as set forth in this Court's opinion which affirmed the judgments of the Williamson County trial court are sufficient to provide all the necessary background for the case *sub judice*. This Court stated,

> At the sentencing hearing on March 5, 2012, the State submitted judgments of convictions which reflected that on January 27, 2012, the appellant was convicted in Rutherford County of three counts of aggravated robbery and one count of attempted aggravated burglary and received an effective sentence of forty-two years. Also in Rutherford County, on June 20, 2012, the appellant was found guilty of violating the probationary sentences he was serving for convictions of possession of a Schedule II drug and aggravated robbery, and he was ordered to serve his original sixteen-year-sentence in confinement. The Rutherford County Circuit Court ordered the appellant to serve the forty-two-year sentence consecutively to the sixteen-year sentence for a total effective sentence of fifty-eight years. In the instant case, the State recommended that the sentences imposed be served concurrently with the forty-two-year sentence but consecutively to the sixteen-year sentence.

> Rutherford County Sheriff's Detective Jim Tramel testified at the sentencing hearing that in October 2010, he responded to the scene of a home invasion in Smyrna. The three victims, Joanna, Tommy, and John McClendon, told Detective Tramel that when they came home, the perpetrator came down the stairs and pointed a gun at them. The perpetrator took money, electronics, a camera, and custom-made golf clubs, one of which had a "beaver head cover." The perpetrator left the residence in the victims' 2005 white Volvo. Police chased the perpetrator but were unable to apprehend him.

> The next morning, Detective Tramel was informed that the victims' car had been located behind the Tractor Supply Company in Triune. Police processed the vehicle, but no golf clubs were found. Thereafter, Detective

Tramel contacted the Williamson County Sheriff's Department and learned that a 2010 white Ford Explorer was stolen approximately one mile from the Tractor Supply Company. Detective Tramel believed the two crimes were linked.

In order to locate the golf clubs, Detective Tramel contacted pawn stores and local Play It Again Sports stores and asked to be informed if anyone brought in golf clubs matching the description of the stolen items. Approximately three days later, the manager of the Play It Again Sports store at Cool Springs Galleria called Detective Tramel and said that the appellant was trying to sell the stolen golf clubs. Detective Tramel contacted the Franklin Police Department to request assistance in apprehending the appellant.

Detective Tramel said that after the appellant was caught trying to sell the golf clubs, he compiled a photograph line-up and showed it to one of the victims, who positively identified the appellant as the perpetrator. Detective Tramel noted that he recorded an interview with the appellant, he played the interview for the victims, and the victims identified the appellant's distinctive voice from the interview.

Detective Tramel stated he felt that the appellant was "a menace, and I do feel that with the violent acts that he's partaken in, it's just a matter of time before somebody winds up getting shot and killed and he eliminates any witnesses that could potentially testify against him." Detective Tramel noted that one of the victims shot at the appellant as he fled the scene.

Detective Tramel said that a couple of days prior to the Rutherford County robbery and automobile theft, Warren Tiller and Allen Stanford each reported that a firearm had been stolen from them. Both men resided near the location of the home invasion. The firearms were ultimately found in the 2010 Ford Explorer. Detective Tramel stated that the appellant had resided in that area and that he was "preying on his neighbors."

Franklin Police Officer Todd Stamper testified that at the time of the offenses, he was the Alpha Shift Patrol Sergeant. In October 2010, he received a call advising that someone at the Play It Again Sports store in Cool Springs, who was later identified as the appellant, was trying to sell unique golf clubs that were possibly related to a home invasion. Officers

tried to apprehend the appellant, and he fled through the back of the store. The officers gave chase but eventually lost sight of the appellant.

Officer Stamper and other officers searched for the appellant for approximately an hour and a half. During the search, Officer Stamper went into a Subway restaurant. The appellant had locked himself in the women's restroom. When officers opened the door, the appellant crawled into the ceiling to try to escape, but the ceiling collapsed. When Officer Stamper and another officer apprehended the appellant, he initially resisted and then became still and unresponsive.

*State v. Bobby Duane Parker*, No. M2012-00748-CCA-R3-CD, 2013 WL 451891 at *1-2 (filed Feb. 6, 2013).

## Analysis

*Objection to State's Peremptory Challenge to Juror*

During jury selection, the following transpired:

| | |
|---|---|
| LAW CLERK: | Batson challenge on the prosecution. |
| THE COURT: | Thank you. Counsel, if you'll approach. [Court Reporter], if you'll come over here to the side. |
| | (A side bar conference occurred out of the hearing of the jury, as follows:) |
| THE COURT: | All right. [Defense Counsel]? |
| [DEFENSE COUNSEL]: | Your Honor, Ms. Mays, who the State has challenged in this round, is an African-American juror, and I think under [*Batson*], they have to give a reason other than that. [sic] From there, they have to explain why they want to strike her as a juror. |
| THE COURT: | That's only if you're saying that the only reason they're striking her is because of |

-4-

|  |  |
|---|---|
|  | discriminatory purposes.  Is that your allegation? |
| [DEFENSE COUNSEL]: | Your Honor, that - - I did not see anything, and I hate to accuse the State of anything.  But I did not see anything in my preliminary questioning of this jury that would cause a problem.  If there is something else, I think they're required to [say]. |
| THE COURT: | All right.  Thank you. |
| [PROSECUTOR]: | Number one, the defendant's not black.  So I don't know why that would be prejudicial to him.  Number two, we didn't like she - - she answered my direct versus circumstantial evidence, that it seemed like she was really confused on the law.  That's our reason for doing it, not because she's black. |
| THE COURT: | All right.  The Court at this time would rule that the State has given [a] nondiscriminatory purpose for excusing this juror, and as a result, I would deny the challenge at this time. |

The prosecutor was referring to a portion of her voir dire questioning, where the following occurred:

|  |  |
|---|---|
| [PROSECUTOR]: | Does anyone here, do they know the difference between direct evidence and circumstantial evidence?  Ma'am, I see you nodding your head back there.  Can you tell us what the difference is? |
| MS. MAYS: | One is positive and circumstance - - one is not positive, not sure of.  But the first one being positive, that this is a fact. |
| [PROSECUTOR]: | Okay.  You're close. |

-5-

The prosecutor continued by providing a hypothetical fact situation which showed the difference between direct evidence and circumstantial evidence. At the conclusion of giving this information, the prosecutor asked all members of the prospective panel collectively, "Does everyone understand that?" The court reporter's notation in the transcript is that all the prospective "jurors indicate by nodding heads."

Defendant argues that the State exercised a peremptory challenge of the juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the United States Supreme Court held "the Equal Protection Clause [of the United States Constitution] forbids the prosecutor to challenge jurors solely on account of their race." *Id*. at 89. Subsequently, the Supreme Court held that the State may make a *Batson* objection of discriminatory peremptory challenges by a defendant. *Georgia v. McCollum*, 505 U.S. 42 (1992). Directly contrary to the prosecutor's initial response to the *Batson* challenge in this case, the prospective juror and the defendant need not be of the same race in order for there to be a valid equal protection claim. *Powers v. Ohio*, 499 U.S. 400, 415-16 (1991).

In the case *sub judice*, Defendant is Caucasian and the prospective juror is African-American, as was the situation in *State v. Hugueley*, 185 S.W.3d 356 (Tenn. 2006). In *Hugueley*, our supreme court addressed five *Batson* challenges by the Caucasian defendant as to peremptory challenges of African-American prospective jurors by the State. The court in *Hugueley* noted that under *Batson*, there is a three-pronged analysis when a *Batson* challenge is made. The objecting party must first establish a prima facie case of purposeful discrimination. If that is done, the other party has the burden to provide a neutral explanation for the peremptory challenge. The race neutral explanation does not have to be persuasive or plausible. If a race neutral reason is given, then the trial court must determine from all the circumstances whether the objecting party has established purposeful discrimination. *Hugueley*, at 368. If the trial court does not explicitly state that the objecting party has satisfied the first prong of establishing a prima facie case of purposeful discrimination, yet goes on to indicate to the other party (the State in the case *sub judice*) to submit its reason for exercising its peremptory challenge, an appellate court may assume that the objecting party made out a prima facie case of impermissible discrimination. *Hagueley*, at 371. As noted above, the trial court in Defendant's case did not state that Defendant made out a prima facia case of discrimination by the State, but immediately asked the State to respond to the *Batson* objection. The prosecutor gave her explanation without requesting the trial court to make a finding on the record as to whether Defendant met his burden on the first *Batson* prong. Accordingly, we must assume that the trial court determined that Defendant made out a prima facie case of impermissible discrimination, and the State accepted this conclusion without objection.

As to the remaining *Batson* determinations, the trial court explicitly found that the State's reason for exercising the challenged peremptory challenge was race neutral. However, despite our supreme court's guidance in *Hugueley*, the trial court in this case did not "carefully articulate specific reasons," *Id.* at 369 (quoting *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 906 (Tenn. 1996), as to whether "the totality of the circumstances support a finding of purposeful discrimination." *Id.* Our supreme court has held that even if a plausible race neutral explanation has been provided, "[t]he trial court may not simply accept a proffered race-neutral reason at face value but *must examine* the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *Hugueley*, at 368 (citing *Miller-El v. Dretke*, 545 U.S. 231 (2005)). The same issue of a trial court's failure to explicitly express on the record its reasoning as to the *Batson* challenges existed in *Hugueley*. In that case, however, our supreme court noted that "the sole indication of purposeful impermissible discrimination by the State in this case is the fact that each of the peremptory challenges used by the State was employed against an African-American venire person." *Hugueley*, at 373. The court in *Hugueley* ultimately determined, despite the trial court's "barely adequate" findings, *Id.* at 371, that,

> Thus, we are confident that the trial court accurately assessed the prosecutor's credibility with regard to his explanations and properly determined that, under all the circumstances, Defendant had not established purposeful discrimination by the State in its exercise of its peremptory challenges.

*Hugueley*, at 375.

In the case *sub judice* the *only* indication of purposeful discrimination is that one African-American prospective juror was peremptorily challenged by the State. When pressed by the trial court to state his factual basis of discriminatory purpose by the State, Defendant's counsel could only respond that the challenged prospective juror was African-American and that defense counsel "did not see anything in my preliminary questioning of this jury that would cause a problem." Furthermore, defense counsel never requested the trial court to make explicit findings under the third prong of *Batson*. We conclude on the merits of the issue that ultimately the trial court accredited the race neutral reasoning given by the prosecutor. Defendant is not entitled to relief on this issue.

*Sentencing*

As to sentencing, Defendant argues that the trial court erroneously used three inapplicable sentencing enhancement factors found in Tennessee Code Annotated section 40-35-114(3), (9), and (10), and as result the trial court imposed an "unlawful sentence."

Defendant does not challenge the imposition of partial consecutive sentencing. More importantly as to the issue he does raise, Defendant does not challenge the trial court's classification of Defendant as a "career offender" pursuant to Tennessee Code Annotated section 40-35-108. In this case, Defendant was convicted of three Class C felony offenses of attempted aggravated robbery and one class D felony offense of attempted aggravated burglary. As pertinent to Defendant's status, the following statutory provisions are applicable:

> **40-35-108. Career offender.** – (a) A career offender is a defendant who has received:
>
> (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the Defendant's conviction offense is a Class A, B or C felony;
>
> * * *
>
> (3) At least six (6) prior felony convictions of any classification if the Defendant's conviction offense is a Class D or E felony.

Tenn. Code Ann. § 40-35-108(a)(1) and (3).

The record reflects that Defendant had many prior convictions. Among the numerous prior felony convictions are one conviction for the Class B felony of aggravated robbery, and thirteen prior convictions for the Class C felony offense of aggravated burglary. Clearly, Defendant was properly classified as a career offender for all sentences in the case *sub judice*. It makes no difference as to the length of the sentence for a career offender whether any enhancement factors are erroneously applied because only one sentence is authorized for a career offender: the maximum sentence within the applicable Range III. Tenn. Code Ann. § 40-35-108(c).

The only appropriate sentence for a career offender who is convicted of a Class C felony is 15 years. The only appropriate sentence for a career offender who is convicted of a Class D felony is 12 years. These sentences were imposed on Defendant. Defendant is entitled to no relief on this issue.

In conclusion, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE