# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. JAMES STACY CARROLL

**Direct Appeal from the Circuit Court for Carroll County**
**No. 99cr-1325, C. Creed McGinley, Trial Judge**

---

**No. W1999-01741-CCA-R3-CD - Decided April 27, 2000**

---

The appellant was found guilty by a Carroll County jury of possession of a controlled substance with intent to sell. The sole issue raised in this direct appeal is whether the State asserted a sufficient race-neutral explanation to support its exercise of a peremptory challenge against an African-American juror. We conclude that the State's use of its peremptory challenge was proper and did not violate Article I, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution. Accordingly, the judgment of the trial court is affirmed.

**Tenn.R.App.P. 3(b) Appeal as of Right; Judgment of the Circuit Court Affirmed**.

HAYES, J. delivered the opinion of the court, in which WELLES and GLENN, J.J. joined.

Billy R. Roe, Jr., Assistant District Public Defender, Camden, Tennessee, for the appellant, James Stacy Carroll.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Kim R. Helper, Assistant Attorney General, G. Robert Radford, District Attorney General, and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, James Stacy Carroll, was found guilty by a Carroll County jury of the offense of possession of a controlled substance (cocaine) with the intent to sell, a class B felony. The trial court sentenced the appellant to eleven years in the Department of Correction. In this appeal as of right, the appellant raises a single issue; whether the trial court properly sustained the State's use of a peremptory challenge against an African-American juror.

Finding no error of law requiring reversal, we affirm the judgment of the trial court.

## Background

Although the evidence supporting the appellant's conviction is not challenged on appeal, the circumstances leading to the conviction are briefly recounted as follows.

On October 22, 1998, a search warrant was executed at a residence in Carroll County by officers of the 24th Judicial District Drug Task Force and the Carroll County Sheriff's Department. The appellant, although not the "target" of the search, was at the residence during its execution and was detained by law enforcement officers. "With his left hand, he pulled out a [pill] bottle. . . [and] threw it to the ground." The pill bottle contained 6.4 grams of a white powdery substance, later identified as cocaine.

**Analysis**

During voir dire of the venire, the State exercised a peremptory challenge against a young African-American male.[1] The juror was discharged and excused from the courtroom. Defense counsel objected to the juror's removal as being a possible violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 (1986) (holding that peremptory challenges may not be exercised in a discriminatory manner). The State provided the court with several race-neutral explanations for the exercise of the peremptory challenge. Specifically, the prosecutor explained that "[the juror] did not look at me. He would not look at me. He looked down the whole time. He doesn't answer questions. That's my reason. This is not a racial case."[2] Although failing to make any specific findings on the record, the trial court concluded that the State's reasons in exercising a peremptory challenge to this juror were sufficiently race-neutral to permit exclusion. At the hearing on the appellant's motion for new trial, the trial court noted that both defense attorney and the prosecutor agreed that the juror refused to make eye contact during voir dire. In this respect, the court noted

> if you don't get the feeling that a juror is willing to listen to the case or is willing to be open and forthright, then certainly that's a race neutral reason for the use of the challenge. I feel that the Court was satisfied at that time and remains satisfied that it was not a race-based used of the peremptory challenge.

The appellant disputes the trial court's ruling that the State asserted a sufficiently race-neutral

---

[1]The appellant is a Caucasian male and was ultimately convicted by an all-Caucasian jury. The record reflects that the State exercised five of its peremptory challenges, two directed at Caucasian females, two directed at Caucasian males, and the challenged strike against an African-American male. Coincidentally, the defense exercised six peremptory challenges, one directed at an African-American male, two directed at Caucasian females, and three directed at Caucasian males.

[2]At the time of the State's use of the peremptory strike, the defense objected under the authority of Batson. The trial court noted that defense counsel had likewise struck an African-American juror. To which defense counsel responded that "[he] had reasons. . . ." Specifically, defense counsel asserted that "[t]his person did not answer a single question. He didn't speak a word."

explanation for the exercise of the peremptory challenge.

The United States Supreme Court has consistently recognized that racially-based juror exclusions affect and injure the integrity of the justice system. See Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 902 (Tenn. 1996) (citing Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 90 S.Ct. 518 (1970); Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261 (1946); Hollins v. Oklahoma, 295 U.S. 394, 55 S.Ct. 784 (1935) (*per curiam*); Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579 (1935); Strauder v. West Virginia, 100 U.S. 303, – S.Ct. – (1879)). Accordingly, in Batson v. Kentucky, 476 U.S. at 89, 106 S.Ct. at 1719, the Court held that the equal protection clause of the Fourteenth Amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors "solely on account of their race." A criminal defendant may object to a race-based exclusion of a juror, effected through peremptory challenges, regardless of whether the defendant and the excluded juror share the same race. Powers v. Ohio, 499 U.S. 400, 415-516, 111 S.Ct. 1364, 1373-74 (1991).

Batson provides a three step process for the evaluation of racial discrimination claims in jury selection. First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71 (1995); Batson, 476 U.S. at 96-98, 106 S.Ct. at 1722-24. If the defendant satisfies this initial burden, the burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the venire member in question. Purkett, 514 U.S. at 767, 115 S.Ct. at 1770-71; Batson, 476 U.S. at 94, 106 S.Ct. at 1721. Third, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24; Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1865-66 (1993). In making its determination of whether use of a peremptory challenge was discriminatory, the trial court must articulate specific reasons for each of its factual findings. Woodson, 916 S.W.2d at 906. The trial court's findings are imperative for rarely will a trial record alone provide a legitimate basis from which to substitute an appellate court's opinion for that of the trial court. Thus, on appeal, the trial court's finding that the State excused a venire member for race-neutral reasons will not be reversed unless it is clearly erroneous. See Woodson, 916 S.W.2d at 906 (citations omitted).

In the present case, the trial court did not explicitly find that the appellant had made a *prima facie* showing of discrimination. Notwithstanding, our supreme court in Woodson concluded that had the trial court determined that no *prima facie* showing was made, the court would not have required the State's race neutral explanation for the challenge. Woodson, 916 S.W.2d at 905. Thus, we assume that the court implicitly found that the appellant had satisfied the first prong of the Batson test. Moreover, although the trial court's findings are relatively sparse relating to the State's race-neutral explanation for the challenge, we find the record sufficient from which to undertake our review.

Again, the prosecutor responded to defense counsel's objection with the explanation that the prospective juror was challenged because he was non-assertive and failed to make eye contact. In reviewing the prosecutor's explanation, we acknowledge that "many of the judgments made by

counsel in picking a jury are purely intuitive and based upon inarticulable factors." United States v. Bentley-Smith, 2 F.3d 1368, 1374 (5th Cir. 1993). Accordingly, while "subjective considerations may not be susceptible to objective rebuttal or verification, they are permitted because of the inherent nature of peremptory challenges, with the understanding that ultimate Batson findings will largely turn on evaluation of credibility of counsel's explanations." Bentley-Smith, 2 F.3d at 1374 (quotations omitted). Notwithstanding, neutral explanations that are based on subjective assessments, such as the juror's demeanor, must be carefully scrutinized. See United States v. Jenkins, 52 F.3d 743, 746 (8th Cir. 1995); United States v. Sherrills, 929 F.2d 393, 395 (8th Cir. 1991). At this step, the crucial inquiry is the facial validity of the prosecutor's explanation. Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Hernandez, 500 U.S. at 360, 111 S.Ct. at 1866. Indeed, "[w]hat Batson means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." Purkett v. Elem, 514 U.S. at 767, 115 S.Ct. at 1771.

With these considerations, we conclude that the basis for the State's use of a peremptory challenge against the juror was sufficiently race-neutral to dispel any indicia of purposeful discrimination. Again, the prosecutor explained that the juror failed to make eye contact. Defense counsel agreed that the potential juror avoided eye contact during voir dire. The lack of eye contact has been approved as justification for rejecting a prospective juror. See, e.g., United States v. Bentley-Smith, 2 F.3d at 1374; State v. Kham Khoang, No. 98-2092 (Iowa Ct. App. filed Dec. 13, 1999); State v. Johnson, 621 So.2d 1167 (La. App. 2 Cir. 1993) (prospective jurors appeared inattentive and unresponsive or failed to maintain eye contact); State v. Jones, 934 P.2d 267 (N.M. 1997) (failure to make eye contact sufficient race-neutral reason).

Accordingly, we hold that the prosecutor's explanation that the juror was excused because he was non-assertive and failed to make eye-contact was sufficiently race-neutral to withstand a Batson challenge. The trial court correctly applied Batson in ruling there had not been a violation. We affirm the judgment of the trial court.