IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. CHRIS EDWARD SMITH

**Direct Appeal from the Criminal Court for McMinn County**
**No. 04-071     Carroll L. Ross, Judge**

_____

**No. E2004-02272-CCA-R3-CD - Filed August 3, 2005**

_____

Defendant, Chris Edward Smith, was convicted of the sale of less than 0.5 grams of cocaine, a Class C felony, and was sentenced as a Range III, persistent offender to ten years imprisonment. On appeal, Defendant argues (1) that the evidence was insufficient to support his conviction; (2) that the trial court erred in overruling Defendant's objection to the prosecutor's peremptory challenge of the only African-American prospective juror in the venire; and (3) that the trial court erred when it mistakenly informed the jury that Defendant was also charged with possession of drug paraphernalia. Defendant does not challenge his sentence on appeal. Following a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Charles M. Corn, District Public Defender; and William Carter Donaldson, Assistant Public Defender, for the appellant, Chris Edward Smith.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Charles W. Pope, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

**I. Sufficiency of the Evidence**

Captain Bill Matthews with the Athens Police Department requested the assistance of an agent from the Tenth Judicial Drug Task Force to assist the Department in an undercover operation involving a "buy/bust." Captain Matthews said that in this type of operation, a law enforcement official would purchase illegal drugs from an individual, and the individual would be immediately arrested. Agent Paul Allen responded to the request. Captain Matthews conducted a surveillance

of a selected area in Athens about twenty minutes before Agent Allen attempted to purchase drugs, and he observed Defendant standing on the street. Captain Matthews showed Agent Allen Defendant's photograph, as well as the photograph of at least one other suspected drug dealer. Agent Allen was equipped with a two-way radio, a video camera, and an audible recording device in his vehicle. Captain Matthews gave Agent Allen two twenty-dollar bills which were photocopied to record the serial numbers of the currency. Captain Matthews, along with officers Patrick Upton and Hall Williams, followed Agent Allen's vehicle.

Agent Allen drove to the Cook Park area and parked. Defendant walked up to Agent Allen's vehicle and asked Agent Allen "what he needed." Agent Allen replied that he "needed a forty." Agent Allen said that a "forty" in street terms meant two rocks of cocaine. Defendant got into the passenger side of Agent Allen's vehicle and closed the door. He asked Agent Allen if he was a police officer. Agent Allen said that he was not, and Defendant pulled two rocks of cocaine out of his sock. Agent Allen gave Defendant $40.00, and Defendant left the vehicle. The transaction was videotaped.

Agent Allen radioed Captain Matthews that the buy was completed and provided a physical description of Defendant. Captain Matthews spotted Defendant in an alley near the spot where Agent Allen had parked his vehicle. Captain Matthews detained Defendant and searched him. Defendant was carrying the two twenty-dollar bills which had been provided to Agent Allen for the purpose of buying drugs.

Carl Smith, with the TBI's forensic science division, testified that the substance purchased from Defendant was cocaine base, or crack cocaine, and weighed 0.2 grams.

Defendant argues that the evidence at best showed only a casual exchange rather than an unlawful sale of a controlled substance.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

It is an offense for a person to knowingly sell a controlled substance to another. Tenn. Code Ann. § 39-17-417(a)(3). The sale of less than 0.5 grams of cocaine is a Class C felony. *Id*. § 39-17-417(c)(2)(A). It is a misdemeanor offense, however, if the transaction constitutes a casual exchange. *Id*. § 39-17-418(a). If the defendant has two or more convictions under this section, the offense is a Class E felony. *Id*. § 39-17-418(d). Whether a transaction is a casual exchange or an unlawful sale may be inferred from all of the facts and circumstances surrounding the transaction, including the amount of drugs possessed by the defendant. *Id.* § 39-17-419; *State v. Prince*, 713 S.W.2d 914, 918 (Tenn. Crim. App. 1986). Although a casual exchange can involve the transfer of money, a transaction will not be deemed a casual exchange if there was a design or previous plan to make the exchange. *State v. Helton*, 507 S.W.2d 117, 120 (Tenn. 1974)*; Loveday v. State*, 546 S.W.2d 822, 826 (Tenn. Crim. App. 1976).

There is no indication that Defendant initiated a conversation with Agent Allen for any purpose other than the sale of cocaine. Defendant handed Agent Allen a specific amount of drugs in exchange for a specific amount of money. The trial court provided the jury with an instruction as to the lesser included offense of the casual exchange of a controlled substance which, as indicated by their verdict, the jury obviously rejected. The evidence when viewed in a light most favorable to the State supports a determination by the jury beyond a reasonable doubt that Defendant intended to sell the cocaine to Agent Allen. Defendant is not entitled to relief on this issue.

## II. *Batson* Challenge

Relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L. Ed. 2d 69 (1986), Defendant argues that the exclusion of the only remaining African-American member of the venire from the jury violated his constitutional right to equal protection under the law.

The record establishes that Defendant is African-American. At the beginning of voir dire, the trial court asked if any members of the venire were related to Defendant, and prospective juror Upton was excused. Five other prospective jurors were excused for cause either because they knew police officers who were involved with the case or were employed by the Athens Police Department, had a family member involved with drugs, or expressed a preconceived opinion about the case.

On the second round of challenges, the State exercised a peremptory challenge to exclude prospective juror Sheila Parks, an African-American, from the venire. The State based its challenge on the belief that Ms. Parks, whose maiden name was Scruggs, was related to Defendant even though she had not responded to the trial court's initial inquiry into family connections between the members of the venire and Defendant. Some of Defendant's extended family members were named Scruggs. The prosecutor also said that Shannon Berger, an intern with the district attorney general's office, observed Ms. Parks wink at Defendant during voir dire.

Defense counsel objected to the prosecutor's peremptory challenge as impermissibly based on Ms. Parks' race. Counsel argued that there was no evidence that Ms. Parks was related to Defendant. During a hearing out of the presence of the jury, Defendant denied that Ms. Parks was

related to him, and said that Ms. Parks did not wink at him during voir dire. Counsel argued that it was impossible for Ms. Berger to have witnessed any exchange with Defendant from her location in the courtroom. The trial court found that the prosecutor's challenge was not racially motivated and excused Ms. Parks from the venire.

In *Batson*, the United States Supreme Court held that a state's use of peremptory challenges to intentionally exclude potential jurors of the defendant's race violates the defendant's right to equal protection. *Batson*, 476 U.S. at 89; 106 S. Ct. at 1719. "A criminal defendant may object to a race-based exclusion of a juror, effected through peremptory challenges, regardless of whether the defendant and the excluded juror share the same race." *State v. Carroll*, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000) (citing *Powers v. Ohio*, 499 U.S. 400, 415-16, 111 S. Ct. 1364, 1373-74, 113 L. Ed. 2d 411 (1991)).

The procedure for invoking a *Batson* challenge was discussed in *Carroll* as follows:

> *Batson* provides a three step process for the evaluation of racial discrimination claims in jury selection. First the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. *Puckett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71, 131 L. Ed. 2d 834 (1995); *Batson*, 476 U.S. at 96-98, 106 S. Ct. 1712, 1722-24. If the defendant satisfies this initial burden, the burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the venire member in question. *Puckett*, 514 U.S. at 767, 115 S. Ct. 1770-71; *Batson*, 476 U.S. at 94, 106 S. Ct. 1712, 1721. Third, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. *Batson*, 476 U.S. at 97-98, 106 S. Ct. 1712, 1723-24; *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1865-66, 114 L. Ed. 2d 395 (1991). In making its determination of whether use of a peremptory challenge was discriminatory, the trial court must articulate specific reasons for each of its findings. *Woodson* [*v. Porter Brown Limestone Co.*], 916 S.W.2d [896,] 906 [Tenn. 1996]. The trial court's findings are imperative for rarely will a trial record alone provide a legitimate basis from which to substitute an appellate court's opinion for that of the trial court. Thus, on appeal, the trial court's finding that the State excused a venire member for race-neutral reasons will not be reversed unless it is clearly erroneous. *See Woodson*, 916 S.W.2d at 906 (citations omitted).

*Carroll*, 34 S.W.3d at 319-20.

As in *Carroll*, the trial court in the case *sub judice* did not make a specific finding that Defendant had made a *prima facie* showing of discrimination. *See id.* at 392. Nonetheless, the trial court would not have required the State to provide a race-neutral explanation for the challenge had the trial court determined that a *prima facie* showing had not been made. *Id.*; *see also Woodson*, 916 S.W.2d at 905. "Thus, we assume that the court implicitly found that [Defendant] had satisfied the first prong of the *Batson* test." *Carroll*, 34 S.W.3d at 320. As the United States Supreme Court

observed in *Hernandez*, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges [without prompting] and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866.

We agree with Defendant's assessment that the trial court's findings are sparse regarding the State's race-neutral explanation for the challenge. The record is sufficient, however, to undertake our review.

The issue in the second step of the *Batson* process rests upon "the facial validity of the prosecutor's explanation." *Id.* at 360, 111 S. Ct. at 1866. "A neutral explanation . . . means an explanation based on something other than the race of the juror." *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* In the second phase of the inquiry, the prosecutor's explanation is not required to be "persuasive or even plausible." *Puckett*, 514 U.S. at 768, 115 S. Ct. at 1771.

In the case *sub judice*, the prosecutor offered two explanations for the challenge. First, the prosecutor surmised that Ms. Parks was related to Defendant because her maiden name was the same as certain members of Defendant's extended family. More importantly, however, the prosecutor challenged Ms. Parks because Ms. Berger observed Ms. Parks wink at Defendant during voir dire. A juror's blood or personal relationship to the defendant is facially valid as a race-neutral basis for the exercise of a peremptory challenge. *See, e.g.,* Tenn. Code Ann. § 22-1-105 ("No person can act as a juror in any case in which the person is interested, or when either of the parties is connected with the person by affinity or consanguinity, within the sixth degree . . . .). The right to challenge for cause "'was designed to exclude from the jury triers whose bias or prejudice rendered them unfit, and peremptory challenge was intended to exclude those suspected of bias or prejudice.'" *State v. Pamplin*, 138 S.W.3d 283, 285-86 (Tenn. Crim. App. 2003) (quoting *Manning v. State*, 155 Tenn. 266, 292 S.W. 451, 455 (1927)).

Defendant argues that notwithstanding the survival through the second step of the prosecutor's explanations for the peremptory challenge to Ms. Parks serving as a juror, the explanations were so implausible as to have no purpose other than discrimination. During the third step in the *Batson* process, "implausible or fantastic justification may (and probably will) be found to be pretexts for purposeful discrimination." *Puckett*, 514 U.S. at 768, 115 S. Ct. at 1771.

The determination of a discriminatory intent on the part of the prosecutor "largely will turn on evaluation of credibility." *Baston*, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 500 U.S. at 365, 111 S. Ct. at 1869.

We conclude that the prosecutor's basis for the use of a peremptory challenge against Ms. Parks was sufficiently race-neutral to withstand a *Batson* challenge. "'The central function of the right of peremptory challenge is to enable a litigant to remove a certain number of potential jurors who are not challengeable for cause, but in whom the litigant perceives bias or hostility.'" *State v. Spratt*, 31 S.W.3d 587, 598 (Tenn. Crim. App. 2000) (quoting *United States v. Annigoni*, 96 F.3d 1132, 1137 (9th Cir. 1996)). Whether or not Ms. Parks had a family relationship to Defendant, an associate of the prosecutor's office observed Ms. Parks expressing a bias toward Defendant, and the trial court accepted this racial neutral reason for exercising a peremptory challenge. Determination of a discriminatory intent depended largely on the evaluation of the prosecutor's credibility in this case. Defendant has not shown that the trial court erred in accrediting the State's racially neutral explanation for excusing the prospective witness. Defendant is not entitled to relief on this issue.

## III. Informing Jury of Drug Paraphernalia Charge

At the commencement of voir dire, the trial court stated:

THE COURT: Ladies and gentlemen, you have been summonsed today as prospective jurors in a criminal case, in which the defendant . . . has been charged in a two-count indictment, one with sale or delivery of cocaine, and one count of possession of drug paraphernalia.

[DEFENSE COUNSEL]: Judge . . . Judge, can we approach?

THE COURT: Yes.

At a bench conference out of the presence of the prospective jurors, defense counsel explained:

[DEFENSE COUNSEL]: Just for the record, the indictment that I have is count one, sale, and in the alternative delivery. There's no paraphernalia involved in this case.

THE COURT: Well, that's what I was given, and paraphernalia.

[PROSECUTOR]: Your Honor, we're, we're doing the sale and delivery (indiscernible). We're going to hold off, as far as electing which, which one to go under, sale or delivery.

THE COURT: Well, what about the paraphernalia though? That's what it says on the docket.

[PROSECUTOR]:              Right.

[DEFENSE COUNSEL]:         Judge, that's, that's two separate indictments.

THE COURT:                 Okay.

[PROSECUTOR]:              That's just an A misdemeanor. We thought we would do this one today.

                * * *

[DEFENSE COUNSEL]:         Judge, may we approach again?

THE COURT:                 Yes.

                * * *

[DEFENSE COUNSEL]:         I know that the jury members can't hear what we're talking about, but I think that certainly is a prejudice to Mr. Smith. I think in all, in an abundance of caution, maybe we ought to just come back and do this another day. The jury's been notified. . .

THE COURT:                 I don't think they know the difference. They won't know the difference.

[DEFENSE COUNSEL]:         Okay.

THE COURT:                 But I'll, I'll say something if you want me to or I'll just let it go.

[DEFENSE COUNSEL]:         All right. Why don't you –

THE COURT:                 If I say something. . .

[DEFENSE COUNSEL]:         Whatever you think is appropriate, Judge, but I think it should be made clear to the jury that what we're here on is a one-count indictment that has an alternative.

THE COURT:                 Okay. That will be fine.

At the conclusion of the bench conference, the trial court informed the prospective jurors that "[w]e're just correcting our information here, and I've been – the indictment is in the alternative, either the sale or delivery of cocaine, so it's really a one-count indictment, and that's what we were clarifying here in that matter there."

Defendant did not include this issue in his motion for new trial. Failure to raise an issue such as this issue in a motion for new trial waives that issue for purposes of appellate review. *See* Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a). Defendant, however, argues the issue under the plain error doctrine. *See* Tenn. R. Crim. P. 52(b). He argues that the trial court's reading of the wrong indictment impermissibly informed the prospective jurors of evidence of Defendant's other alleged crimes and conduct and was unfairly prejudicial.

In order to grant relief under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the defendant did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)(citing *State v. Adlkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The record must support the presence of all five factors; the absence of only one factor precludes further consideration. *Smith*, 24 S.W.3d at 283. Moreover, the error "must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Id.* (citing *Adkisson*, 899 S.W.2d at 642).

In the case *sub judice*, the trial court, at defense counsel's request, provided a prompt curative instruction to the jury acknowledging the correction of an error in the docket. Defendant did not raise any objection to the content or scope of the trial court's instruction. The trial court's curative instruction was sufficient to correct any possible prejudice that resulted from the misreading of the indictment. The jury is presumed to follow the trial court's instruction. *State v. Smith*, 893 S.W.2d 908, 914 (Tenn. 1994). Moreover, the record is devoid of any indication that the jury saw an indictment charging Defendant with possession of drug paraphernalia, and no evidence was presented at trial that even hinted at the presence of such items. The evidence supporting Defendant's conviction of the sale of cocaine was overwhelming. *See United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 360 (2002) (For a "substantial right" to have been affected by the error, the defendant must show that he or she was prejudiced by the error).

Based on the facts and circumstances present in this case, we cannot conclude that the issue presented rises to the level of plain error. Defendant is not entitled to relief on this issue.

## CONCLUSION

Following a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE