# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 2, 2004

## STATE OF TENNESSEE v. LAVERN "VON" GEANES

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6682B     Jon Kerry Blackwood, Judge**

---

**No. W2003-01206-CCA-R3-CD  - Filed May 3, 2004**

---

A jury convicted the defendant of delivery of 0.5 grams or more of a Schedule II controlled substance (cocaine), a Class B felony.  He contends that the trial court erred in (1) overruling his Batson objection to the State's peremptory challenges of two prospective jurors, and (2) overruling his objection to the introduction of the cocaine seized and the subsequent test results based on the State's failure to properly establish chain of custody.  The trial court's decision to overrule the Batson objection was not clearly erroneous because the State offered reasons for the challenges that do not inherently evidence a discriminatory intent.  As to the second issue, we conclude that the record does not establish a reasonable assurance of the identity of the evidence.  Therefore, we reverse and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Wayne T. DeWees, Bolivar, Tennessee, for the appellant, Lavern "Von" Geanes.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A jury convicted the defendant, Lavern "Von" Geanes, of delivery of 0.5 grams or more of a Schedule II controlled substance (cocaine), a Class B felony.  The trial court sentenced the defendant to serve ten years in the Tennessee Department of Correction as a Range I offender.  The defendant timely filed his notice of appeal.  He contends that the trial court erred in (1) overruling his Batson objection to the State's peremptory challenges of two prospective jurors, and (2) overruling his objection to the introduction of the cocaine seized, based on the State's failure to

properly establish chain of custody. We reverse the judgment of the trial court and remand for a new trial.

## Facts

On February 28, 2002, the defendant and a confidential informant, Timothy Neal Woods, entered into a conversation about a possible purchase of drugs by Woods. Woods testified that the defendant approached him at a store in Bolivar and asked him if he wanted to "buy something." According to Woods, he and the defendant returned to Woods's motel room. While the two of them were in the room, Woods called Agent Nathan Bishop to arrange a time for the buy. Bishop instructed Woods to arrange a purchase of $100 worth of crack cocaine at 9:00 p.m. The defendant agreed to the sale and left the motel. Bishop and Agent Al Freeman arrived at the motel and devised a plan whereby they would hide in the closet while the drug transaction took place. The officers removed the door handle from the closet so that they would not get locked inside.

After the defendant made the arrangement with Woods, he went to the home of his co-defendant, Wesley Bills. The defendant told Bills that a man at the motel wanted to buy $100 worth of drugs. Bills indicated that he had the requested amount of drugs and agreed to the sale. At approximately 8:55 p.m., the defendant, Bills, and several other persons traveled to the Bolivar Inn to complete the drug transaction.

At approximately 9:00 p.m., someone knocked on the door of the room containing Woods and the two police officers. After the officers rushed into the closet, Woods answered the door. The defendant asked Woods if he had the money, and he replied affirmatively. The defendant left the room and returned moments later with Bills and another man. Woods and Bills exchanged money for drugs, after which time Woods gave the signal that the transaction was complete. Bishop and Freeman came out of the closet and arrested the men. The officers recovered four brown, rock-like substances given to Woods by Bills in exchange for the money. They also recovered a pill bottle that contained another fourteen pieces of rock-like substances.

Bishop testified that he kept the substances that were recovered in his possession until he returned to the sheriff's department. Upon arrival at the department, he placed the substances into a sealed plastic evidence bag. The bag was kept in a locked evidence locker at the sheriff's department. On March 18, 2002, Bishop removed the evidence from the locker and transported it to the crime lab for testing. According to Mark Eric Dunlap, a forensic scientist at the crime lab, the substances were received on March 18, 2002. Dunlap testified that Agent Lisa Harris checked the items out of the vault on April 23, 2002, and checked the items back into the vault on April 25, 2002. According to Dunlap, the substances remained in the vault until they were returned to Officer Billy Davis on June 7, 2002. However, Bishop testified that he recovered the evidence from the crime lab following testing.

Officer Billy Davis did not testify, and Bishop did not offer any testimony as to the whereabouts of the evidence from June 7, 2002, until December 17, 2002. According to Bishop and

Dunlap, the substances had to be retested in December because Harris was no longer employed at the lab and could not testify as to the results of the tests she performed. On December 17, 2002, Bishop transported the substances to the lab for testing a second time. Dunlap stated that the substances were removed from the lab vault and tested again on December 18, 2002. It was determined from the test results that the substances, including the four rocks used in the transaction and the fourteen rocks found in the pill bottle, tested positive as cocaine weighing 1.0 and 3.9 grams, respectively.[1]

## Analysis

### I. Peremptory Challenges

The defendant contends that the trial court erred in overruling his objection to the State's peremptory challenges of two African-American jurors. In Batson v. Kentucky, the United States Supreme Court held that a state's use of peremptory challenges to intentionally exclude jurors of the defendant's race violates the defendant's right to equal protection. 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The Court upheld this principle in Powers v. Ohio, but eliminated the requirement that the defendant and the potential juror share the same race. 499 U.S. 400, 415, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). The Court subsequently held that peremptory strikes based solely on gender are also constitutionally impermissible. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 140, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994); see State v. Turner, 879 S.W.2d 819, 821-23 (Tenn.1994).

A defendant seeking to raise a Batson claim must first make a prima facie showing of purposeful discrimination against a prospective juror. 476 U.S. at 93-94. The defendant must establish that a consideration of all the relevant circumstances raises an inference of purposeful discrimination. Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 903 (Tenn.1996). Once the defendant establishes a prima facie showing of purposeful discrimination, the burden then shifts to the State to establish a neutral basis for the challenge. Batson, 476 U.S. at 97. The State's explanation cannot be based on mere "stereotypical assumptions," but it need not rise to the level of a challenge for cause. State v. Ellison, 841 S.W.2d 824, 826 (Tenn. 1992) (citing Batson, 476 U.S. at 97). This essentially "comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible," which might include consideration of such factors as the prosecutor's demeanor, the reasonableness or improbability of the explanation, and the relationship to accepted trial strategy. Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

---

[1] Following the arrest of the subjects, the police officers performed a search of the co-defendant's residence and recovered another eleven rock-like substances. The State also introduced into evidence the results of tests apparently performed in April, 2002, on the substances recovered from the co-defendant's residence. Dunlap testified that he performed the tests, and the results indicated that the substances were cocaine weighing 3.2 grams. The record does not indicate that the defendant was charged in connection with the substances recovered from the residence.

In ruling on peremptory challenges, the trial court must give specific reasons for each of its factual findings. Woodson, 916 S.W.2d at 906. The trial court should explain why the objecting party has or has not established a prima facie showing of purposeful discrimination. If the defendant has made a prima facie showing, the court must determine whether the state gave a neutral reason and whether it finds that the challenge was the result of purposeful discrimination. State v. Carroll, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000). "The race or gender neutral explanation need not be persuasive, or even plausible . . . . Unless a discriminatory intent is inherent in the [proponent's] explanation, the reason offered will be deemed race neutral." Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). The trial court's findings are to be accorded great weight and will not be set aside unless they are clearly erroneous. Woodson, 916 S.W.2d at 906; see also Miller-El, 537 U.S. at 339-40 (noting deference to the trial court is necessary relating to credibility).

Following the State's submission of peremptory challenges concerning two of the potential jurors, the defendant objected based on Batson. Following the objection, the court prompted the State for a response. The State offered the following explanation for the challenges:

> Your Honor, juror number 19, Ms. Cheairs, when she answered certain questions, she seemed to be distant. I didn't think that she was focused on the proceedings. Juror number 20, Ms. Cheairs, I think she was awfully quick to call a confidential informant a snitch. I think that she has a preconceived notion regarding that. And those are the two reasons that I struck those two.

Without making any specific findings, the court overruled the defendant's objection. While the court did not specifically state that the defendant had made a prima facie showing of purposeful discrimination, the court's prompting of the State for a response implicitly indicates that the court had determined that the requisite showing had been made. The State responded by offering reasons that do not inherently evidence a discriminatory intent. Although the court should have made specific findings, we conclude that the court reasonably accepted the State's race neutral reasons for challenging the jurors. By overruling the objection, the court implicitly found that the State did not act with purposeful discrimination. We conclude that the trial court's decision was not clearly erroneous. This issue is without merit.

## II. Chain of Custody

The defendant next contends that the trial court erred in overruling his objection to the admission of the cocaine seized during the incident and subsequent test results because the State failed to establish an adequate chain of custody. Specifically, the defendant argues that the record does not establish the whereabouts or the integrity of the evidence during the six-month period from June 7, 2002, until December 17, 2002. In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's

-4-

determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Id. at 701. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). The circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The requirement that a party establish a chain of custody before introducing such evidence is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." Scott, 33 S.W.3d at 760 (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

The testimony elicited at trial does not establish the whereabouts of the evidence from June 7, 2002, until December 17, 2002. Additionally, there is an apparent discrepancy in the identity of the officer who recovered the evidence following the initial testing. Bishop testified that he recovered the items from the lab on June 7, while Dunlap testified that Officer Billy Davis recovered the items. The State made no effort to clarify this discrepency during Dunlap's testimony. Further, the State did not recall Bishop to testify after Dunlap had testified. Thus, we are unable to conclude that Bishop was with Davis when the drugs were picked up from the lab on June 7, 2002. Furthermore, Bishop offered no testimony as to where he recovered the evidence from when he transported it to the lab on the second occasion. Without knowing what happened to the evidence during the six-month period, we cannot conclude that there has been no tampering, loss, substitution, or mistake with respect to the evidence. We conclude that the record does not establish a reasonable assurance of the identity of the evidence that was tested in December 2002. Therefore, we reverse and remand for a new trial.

_____
JOHN EVERETT WILLIAMS, JUDGE