IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 17, 2015

## QUINTON SANDERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 0004327    James C. Beasley, Jr., Judge**

_____

**No. W2014-02232-CCA-R3-CO  -  Filed March 2, 2016**

_____

The petitioner, Quinton Sanders, appeals the denial of his petition for post-conviction relief.  On appeal, the petitioner argues that the post-conviction court failed to make adequate findings of fact and conclusions of law regarding one of his claims, and he argues that trial counsel was ineffective.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT H. MONTGOMERY, JR., J., joined.  ROGER A. PAGE, J., not participating.

Andrew M. Bonderud, Ponte Vedra Beach, Florida, for the Appellant, Quinton Sanders.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Amy Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The petitioner was initially convicted of first degree felony murder, attempted theft of property over $1,000 but less than $10,000, and theft of property over $10,000 but less than $60,000. _State v. Quinton Sanders_, No. W2001-01927-CCA-R3-CD, 2004

WL 221217, at *1 (Tenn. Crim. App. Jan. 30, 2004). This court summarized the facts of the petitioner's case as follows:

> [O]n October 12, 1999, the appellant and three other African-American males attempted to steal clothes valued at $5,200 from Goldsmith's Department Store in the Raleigh Springs Mall in Memphis. Before the group could complete the theft, they were chased from the store by a security guard. With the appellant at the wheel of a green Chevrolet Malibu, which he had stolen previously, the young men fled the mall parking lot at a high rate of speed. The Chevrolet almost struck a police cruiser just coming into the mall parking lot. This incident set off a police pursuit of the appellant and his compatriots.
>
> During the pursuit, in which several police vehicles were involved, the appellant drove the stolen Chevrolet at speeds up to 98 miles per hour. One of the police vehicles involved in attempting to apprehend the appellant and his companions was driven by Memphis Police Officer Don Overton. As Officer Overton attempted a left hand turn, the appellant's vehicle crashed into the side of [Officer] Overton's police cruiser. Officer Overton later died of injuries received in the crash.

*Quinton Sanders*, 2004 WL 221217, at *1.

On appeal, this court affirmed his convictions for attempted theft of property and theft of property. *Id.* This court reversed the conviction for felony murder and remanded for a new trial after concluding that the failure to instruct the jury with respect to the lesser included offenses of felony murder was not harmless error. *Id.* Following a new trial, the petitioner was again convicted of felony murder, and this court affirmed the conviction. *State v. Quinton Sanders*, No. W2006-00760-CCA-R3-CD, 2009 WL 1424188, at *1 (Tenn. Crim. App. May 20, 2009). Among the issues raised on appeal was the petitioner's argument that the trial court incorrectly applied *Batson v. Kentucky*, 476 U.S. 79 (1986). This court rejected the argument, concluding that "[a] review of the available record supports the trial court's finding that the evidence was insufficient to support a finding of purposeful discrimination by the [S]tate." *Id.* at *8-11.

The petitioner filed a timely *pro se* petition for post-conviction relief. He was appointed counsel, who filed an amended petition. Before the post-conviction court held a hearing on the petition, the petitioner also filed a petition for the writ of error coram nobis.

2

The trial court held one hearing for both petitions.[1]  The petitioner testified that trial counsel began representing him on appeal after his first trial and continued to represent him during his retrial for felony murder.  The petitioner testified that trial counsel did not conduct an independent investigation of the case. He stated that the only preparations trial counsel made for trial were to review the transcript from the first trial and to drive the route from the mall to the crash scene.  The petitioner said that trial counsel did not interview any witnesses, including those who could have testified that they saw the crash.  He also testified that trial counsel did not interview the petitioner's co-defendants Lewis Grimes and Vincent White, and he stated that trial counsel did not thoroughly cross-examine Mr. White.  He contended that a proper cross-examination of Mr. White would have revealed that Mr. White never attended a meeting at Mr. Grimes's home, where the plot to steal clothing was discussed.

The petitioner testified that trial counsel did not preserve the preliminary challenge sheets from voir dire, which he contended prevented this court from ruling on his *Batson* claim on direct appeal.  He stated that trial counsel objected to the removal of five African-American jurors and moved the court to require the State to provide a racially neutral reason for striking the jurors.  He testified that the trial court determined that the State did not need to articulate reasons for striking members of the jury pool.

The petitioner stated that trial counsel recused himself from his second direct appeal due to a mental illness, although the petitioner was unaware of the reason for the recusal at the time.  The petitioner testified that he believed he was prejudiced by trial counsel's illness because it caused him to improperly investigate the case and to fail to seek out witnesses who could testify on the petitioner's behalf.

Trial counsel testified that he had been a licensed attorney since 1987 and that his practice focused primarily on criminal defense appellate work.  Trial counsel estimated that he had tried at least fifty jury trials in addition to handling "hundreds of" appellate matters.  Trial counsel testified that he received discovery from counsel from the petitioner's first trial.  Trial counsel testified that based on his trial preparation and review of the transcript of the first trial, his theory of the case was that the petitioner was only guilty of reckless homicide or criminally negligent homicide.  He explained that his theory was that the attempted theft had been completed before the vehicular pursuit began and that the petitioner fled because he was driving a car that had been stolen weeks earlier.  He argued at trial that because the crime underlying the charge of felony murder

---

[1] The trial court denied the petition for writ of error coram nobis.  On appeal, the petitioner does not contest the denial of his coram nobis petition.  Therefore, we include only the testimony from the hearing that is relevant to the issues raised on appeal regarding the petition for post-conviction relief.

had been completed before the chase began, the petitioner was not guilty of felony murder.

Trial counsel testified that he did not attempt to retain an expert at trial because he was not sure "what an expert could offer." Trial counsel reviewed the expert testimony presented by the State in the first trial and concluded that the testimony was admissible. Trial counsel did not attempt to hire an expert for the second trial because he felt that there was not a factual basis to dispute the State's experts. He explained that his theory of the case was not to dispute the factual aspects of the crash but to argue that the attempted theft had been completed by the time the chase began, meaning that the petitioner was guilty only of reckless homicide or criminally negligent homicide.

Trial counsel testified that he did not interview any of the petitioner's co-defendants because he had read the transcript of the first trial and was familiar with the testimony of all of the co-defendants. He testified that "[n]othing said at trial surprised" him. Trial counsel testified that he did not thoroughly cross-examine Mr. White about his relationship with Mr. Grimes because he wanted to avoid emphasizing anything related to the petitioner and gang affiliation. He stated that Mr. Grimes "was a higher ranking person affiliated with the gang in question." He explained that he did not interview Mr. Grimes because he was not sure "what he would have to offer that could help" and because trial counsel strategically wished to limit any suggestion of gang affiliation.

Trial counsel recalled voir dire and his discussion with the trial court. He testified that the State used its first peremptory challenge on a Caucasian male and that the remaining challenges were used on African-Americans. There were several rounds where the State did not make peremptory challenges, and trial counsel attempted to explain to the trial court that in the rounds where the State did not make a challenge, an African-American juror "would be the next person in the box." Trial counsel testified that the trial court ruled that he had not established a prima facie case of discrimination and did not require the State to make race neutral explanations for its peremptory challenges.

Trial counsel testified that he believed that a *Batson* issue was raised on the petitioner's direct appeal. During voir dire, trial counsel verbally described to the trial court why he believed that he had made a prima facie case of purposeful discrimination. He testified that he believed that this discussion "was sufficient to preserve the issue [for appellate review], but the Court of Criminal Appeals disagreed." At this point, the post-conviction court questioned the prosecutor about the challenge slips from voir dire. The prosecutor stated that the petitioner's argument was that counsel was ineffective for failing to have the challenge slips marked as exhibits to be preserved for the record on appeal. The prosecutor explained that the lack of challenge slips meant that it was

4

impossible to identify whether the State or the defense objected to a particular juror, but she explained that the reasons for all of the challenges were included in the record.

Trial counsel testified that he moved to withdraw from the petitioner's case during his second appeal in 2007 because he was preparing to attend residential treatment for his struggles with depression. The motion was granted, and new counsel was appointed for the petitioner's second direct appeal. Trial counsel stated that he did not feel that his illness affected his representation because his issues were not as severe at the time of the petitioner's trial, which was conducted from October 10 to October 14, 2005, as they were when he voluntarily sought treatment. He explained that his wife passed away in May 2006 after a lengthy battle with an illness. In August 2005, trial counsel began representing a murder defendant in a high-profile case in Nashville. After the conclusion of the petitioner's trial, the Nashville case began "going downhill fast, in a very public manner." Trial counsel testified that the progress of the case, along with his wife's illness "and the combination of other stressors," resulted in the worsening of his depression. He testified that all of these events occurred after the conclusion of the petitioner's trial.

At the conclusion of the testimony, the post-conviction court made oral findings and denied the petition. The court found that trial counsel "had a very valid strategy" and that his pursuit of his defense theory was "a proper, good trial strategy." The court noted that while the strategy was unsuccessful, "it was a good strategy" and was "the only strategy that [the court] could see that would be applicable." The court found that it did not appear that there were "any other witnesses that could have been called that would have made a difference in the testimony that was presented to the jury," implicitly crediting the testimony of trial counsel that he had investigated the issue of the State's experts and found nothing to contest. The court found that regardless of whether the petitioner and his co-defendants were acting under orders from Mr. Grimes or of their own accord in shoplifting, the jury found that there was a connection between the shoplifting and the traffic accident, which the post-conviction court found was "the key to the case." The court found that trial counsel "was very well prepared and did a very thorough job in attempting to represent" the petitioner.

Based on trial counsel's testimony regarding his trial strategies, the efforts that he made with the case, and his defense theory, the court found that trial counsel "was not suffering under any type of mental depression, or otherwise[,] that affected his ability to represent" the petitioner. The court noted that trial counsel's illness worsened after the petitioner's trial and found that there was nothing in the record to indicate that at the time of the petitioner's trial, trial counsel "was suffering under any type of impairment that affected his ability to represent" the petitioner. The post-conviction court did not make

5

any findings of fact or conclusions of law regarding the failure to include the challenge sheets in the appellate record when denying the petition for post-conviction relief.

The petitioner filed a timely notice of appeal, and we proceed to consider his claims.

## ANALYSIS

The petitioner contends that the post-conviction court failed to make adequate findings of fact and conclusions of law for his claim that trial counsel was ineffective for failing to preserve the peremptory challenge sheets for the record on the petitioner's direct appeal. He also argues that trial counsel provided ineffective representation because trial counsel did not interview any of the State's witnesses or the petitioner's co-defendants, and he argues that trial counsel's illness prevented him from effectively representing the petitioner.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). The petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). This court generally defers "to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013). Claims for post-conviction relief premised on ineffective assistance of counsel present mixed questions of law and fact, which this court reviews de novo with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove that: (1) counsel's performance was deficient; and (2) the deficiency

prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216 (citing *Goad*, 938 S.W.2d at 370).

## A. Challenge Sheets

The petitioner argues that trial counsel was ineffective for failing to include the peremptory challenge sheets in the appellate record on the petitioner's direct appeal because the error prevented this court from addressing his *Batson* issue on the merits. He contends that the post-conviction court's subsequent failure to make findings of fact and conclusions of law on this issue deprived him of the opportunity of meaningful appellate review of this claim, necessitating a remand for the post-conviction court to make the appropriate findings. The State responds that the petitioner cannot demonstrate that the failure to preserve the challenge sheets would have resulted in a different outcome for the petitioner's direct appeal.

The petitioner correctly states that a post-conviction court shall enter a final order disposing of the petition that states "the findings of fact and conclusions of law with regard to each ground" raised in the petition. T.C.A. 40-30-111(b) (2010). While this

7

requirement is mandatory, "the failure of the trial judge to abide by the requirement does not always mandate a reversal of the trial court's judgment." *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). The primary purpose of "this requirement is to facilitate appellate review" of the post-conviction proceedings, and the failure to adhere to this requirement will not necessitate reversal when the record is sufficient for review. *Id.*

We agree that the post-conviction court failed to make adequate findings of fact and conclusions of law regarding the petitioner's claim. On direct appeal, however, this court noted the absence of the challenge slips but relied on the transcript of voir dire to conduct a substantive analysis of the petitioner's *Batson* claim. *Quinton Sanders*, 2009 WL 1424188, at *11. Further, there is no dispute as to the factual question that trial counsel omitted the challenge sheets. The dispute is whether the omission constituted deficient performance that prejudiced the petitioner, which is a question of law that this court reviews de novo. *See Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008)). Therefore, we conclude that the record is sufficient to provide for a meaningful appellate review of the petitioner's claim.

A defendant seeking to raise a *Batson* claim must first make a prima facie showing of purposeful discrimination against a prospective juror. *Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986). The defendant must establish that a consideration of all the relevant circumstances raises an inference of purposeful discrimination. *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 903 (Tenn.1996). Once the defendant establishes a prima facie showing of purposeful discrimination, the burden then shifts to the state to establish a neutral basis for the challenge. *Batson*, 476 U.S. at 97. The State's explanation cannot be based on mere "stereotypical assumptions," but it need not rise to the level of a challenge for cause. *State v. Ellison*, 841 S.W.2d 824, 826 (Tenn. 1992) (citing *Batson*, 476 U.S. at 97). In ruling on peremptory challenges, the trial court must give specific reasons for each of its factual findings. *Woodson*, 916 S.W.2d at 906. The trial court should explain why the objecting party has or has not established a prima facie showing of purposeful discrimination. *Id.* at 904. If the defendant has made a prima facie showing, the court must determine whether the state gave a neutral reason and whether it finds that the challenge was the result of purposeful discrimination. *State v. Carroll*, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000). The trial court's findings are to be accorded great weight and will not be set aside unless they are clearly erroneous. *Woodson*, 916 S.W.2d at 906

As an initial matter, we note that the petitioner's claim in his petition for post-conviction relief that this court did not address his *Batson* issue on the merits due to the absence of the challenge sheets is incorrect. At trial, the trial court ruled that the defendant had failed to establish a prima facie case of purposeful discrimination.

*Quinton Sanders*, 2009 WL 1424188, at \*9-10. On appeal, this court concluded that the absence of the challenge slips made the record incomplete and required the appellate court to "presume that the trial court was correct in its ruling that the defendant failed to establish a prima facie case of purposeful discrimination," which is the first prong of the *Batson* analysis. *Id.* at \*10-11. However, the court went on to further analyze the issue utilizing the transcript of voir dire. *Id.* at \*11.

During voir dire, the defense requested that the State be required to provide a race-neutral reason for its peremptory challenges. *Id.* at \*9. At that point, the State had exercised four challenges, one against a Caucasian member of the jury pool and three against African-American members of the pool, and the defendant had exercised two challenges, both against Caucasians. *Id.* The trial court found that there was no need for the State to provide a race-neutral explanation for the challenges. *Id.* After the State exercised two more peremptory challenges, the defense again requested that the State provide a race-neutral explanation for the removal. *Id.* at \*10. The trial court noted that five of the State's six challenges had been used on African-Americans. *Id.* The trial court noted that in the two rounds prior to the State's fifth and sixth challenges, the State had "passed" on challenges, indicating that the State was willing to accept the jury. *Id.* The court also noted that the defendant had exercised a total of four challenges, one against an African-American and three against Caucasians. *Id.* The trial "court held that, as to both the [S]tate and the defendant, there was not sufficient evidence of a discriminatory pattern to 'necessitate articulating race-neutral reasons.'" *Id.* The trial court further noted that the jury pool of sixty-five to seventy potential jurors was fairly evenly divided among Caucasians and African-Americans. *Id.* The court stated that voir dire was a fair selection process that resulted in "a fair and very representative jury, all of whom indicated a willingness to be open-minded and fair in their services as jurors in this case." *Id.* The trial court found that there was not "any *Batson* problems, whatsoever" and that the petitioner had failed to establish a prima facie case of discrimination. *Id.*

In reviewing the transcript, this court noted that potential jury members were questioned about "their exposure to the publicity surrounding this case, their personal knowledge or familiarity with [the victim] and his family, and their personal history surrounding crime, law enforcement and automobile accidents." *Id.* at \*11. Ten jurors were removed via peremptory challenges. *Id.* Of the ten, four indicated that they had knowledge of the case or of the victim and his family. *Id.* One juror had prior knowledge of the case and had also been the victim of a carjacking. *Id.* Three jurors indicated that they had been involved in automobile accidents, and one juror indicated that he had been in a car wreck that resulted from his participation in a car race. *Id.* One juror indicated that she did not wish to serve, and another stated that his daughter worked in law enforcement dispatch. *Id.* This court concluded that the "available record supports the trial court's finding that evidence was insufficient to support a finding of

9

purposeful discrimination by the [S]tate." *Id.* The court further concluded that there was "no clear indication that the trial court erroneously applied *Batson* in this case" and denied the petitioner relief. *Id.*

We conclude that the petitioner cannot establish that but for the omission of the challenge sheets, the outcome of his direct appeal would have been different. The challenge sheets would have identified the jurors removed and the party responsible for the removal. However, even without the challenge sheets, this court was aware that four Caucasians and six African-Americans were removed from the jury. Further, the reasons why these jurors were excused were available to this court, and all of these reasons are race neutral. This court also considered and affirmed the findings of the trial court, which are afforded great deference and not set aside absent a showing that they are clearly erroneous. *See Woodson*, 916 S.W.2d at 906. There is no indication that had this court been able to identify each juror by race and reason for removal, we would have concluded that the petitioner had established that there was purposeful discrimination on the part of the State. Accordingly, the petitioner has not shown that he suffered any prejudice, and he is not entitled to relief.

### B. Trial Preparation

The petitioner argues that trial counsel was ineffective for failing to interview any of the State's witnesses or the petitioner's co-defendants. He contends that trial counsel's review of the transcript of the first trial was insufficient preparation because trial counsel did not participate in the petitioner's first trial. He also cites to trial counsel's mental illness, arguing that the illness is an independent claim of ineffective assistance of counsel and that it prevented trial counsel from adequately preparing for trial. The State responds that the petitioner has failed to demonstrate that counsel's performance was deficient or that it caused him prejudice.

The post-conviction court found that trial counsel "was very prepared" with "a very valid strategy" for the second trial, and the court noted that the second trial was "a repeat" of the first trial. The court found that there were not any additional witnesses that trial counsel could have called that would have affected the outcome of the trial or that further cross-examination of Mr. White would have led to a different result. The court found that trial counsel made a strategic decision to minimize references to Mr. White's and Mr. Grime's gang affiliation. Additionally, the court found that trial counsel was not suffering from any mental illness at the time of the petitioner's trial that adversely affected his representation of the petitioner. Trial counsel testified that he reviewed the testimony of the first trial, which included expert testimony and the testimony of the petitioner's co-defendants, and that he was not surprised by any of the testimony at trial. He indicated that the State's expert testimony was properly admitted in the first trial and

10

that there was no basis to factually dispute the State's experts with experts of his own. Trial counsel testified that he did not believe that Mr. Grimes would be a helpful witness, and he also testified that he wished to limit the suggestion of the petitioner's gang affiliation. Trial counsel also testified that his struggles with depression began to manifest themselves after the petitioner's trial. We conclude that the record does not preponderate against the findings of the post-conviction court, and the petitioner is not entitled to any relief.

## C. CONCLUSION

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____

JOHN EVERETT WILLIAMS, JUDGE