FILED

02/11/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 21, 2021

## STATE OF TENNESSEE v. DAVID WARE

**Appeal from the Criminal Court for Knox County**
**No. 114808   Steven Wayne Sword, Judge**

_____

## No. E2021-00101-CCA-R3-CD

_____

A Knox County grand jury indicted the defendant, David Ware, for unlawful possession of a firearm by a convicted felon and simple possession of marijuana.  A jury subsequently convicted the defendant as charged, and the trial court imposed an effective six-year sentence suspended to supervised probation after six months of service in the Tennessee Department of Correction.  On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm and argues the trial court erred by granting one of the State's peremptory challenges during jury selection. Following our review of the briefs, the record, and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Aubrey L. Davis, Knoxville, Tennessee, for the appellant, David Ware.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### *Procedural and Factual History*

On January 1, 2019, at least six members of the Knoxville Police Department's Violence Reduction Team responded to a second-floor apartment in the Southland Square

apartment complex in search of a murder suspect.[1]  The officers established a perimeter around the apartment before conducting a "knock-and-talk" with the residents.[2]  Officer David Gerlach was positioned on "the backside of the building" while Officer Diondre Jackson, along with two other officers, participated in a "knock-and-talk" at the front door. After knocking, the officers "made contact" with two women and two children.  While the officers spoke with the women, Officer Gerlach maintained his position outside where he "heard a metallic sound."  He "looked up at the window" on the backside of the apartment and saw "an African-American male hand stick out from between the window and the screen and drop a handgun, and [] saw the handgun fall and hit the air-condition[ing] unit." The firearm fell behind the air conditioning unit, and Officer Gerlach "immediately got on the radio and told all the units on the scene that somebody dropped a handgun out of the back window."

Officer Jackson heard Officer Gerlach announce that "somebody just threw a gun out the back window" and asked the women and children to exit the apartment.  The officers then "began giving verbal commands to whoever else was inside the apartment" to exit.  The defendant responded to the officers' commands and exited the "rear of the apartment."  No one else was found in the apartment at the time.  The officers detained the defendant, and Officer Jackson entered the bedroom that the defendant had just exited.  In the bedroom, he saw a window and noticed that the window screen "was sort of pushed open and pried open."  Below the window, Officer Jackson observed an air conditioning unit.

Officers identified the firearm that fell from the window as a Taurus .9-millimeter handgun.  The firearm was loaded with three rounds in the magazine and one in the chamber.  Officers also found spent shell casings that "appeared to be old" near the firearm. Officer Gerlach displayed the firearm, magazine, and shell casings to the jury.[3]  Numerous photographs depicting the apartment, the open window, the air conditioning unit, and the firearm were also entered into evidence and presented to the jury.

While still on the scene, Officer Gerlach searched the defendant and "found a baggy of marijuana" in his pants.  Tennessee Bureau of Investigation Special Agent Hannah Peterson, an expert in forensic chemistry, examined the substance and determined it contained 1.84 grams of marijuana, a schedule VI substance.  Special Agent Peterson presented the marijuana to the jury along with her forensic chemistry report.

---

[1] It was made clear at trial that the defendant was not the potential murder suspect for whom the officers were looking.

[2] Officer Gerlach described a "knock-and-talk" as "a consensual encounter where we literally just knock and then talk with any of the residents.  It's just standard."

[3] Crime lab technicians were unable to recover latent prints from the firearm.

Finally, the State presented testimony from Stephanie Ogle, the office supervisor for the Knox County Criminal Court. Ms. Ogle identified two judgment forms which established the defendant had two, prior Class E felony convictions for simple possession. The judgments were entered against the defendant on September 21, 2012, in case numbers 99844 and 99519. The judgment forms were entered into evidence.

The State then rested its case, and the defendant did not present any proof. The trial court denied the defendant's motion for a judgment of acquittal, and the jury convicted the defendant as charged. After a sentencing hearing, the trial court imposed an effective sentence of six years suspended to supervised probation after six months of service in the Tennessee Department of Correction. The defendant filed a motion for a new trial, arguing that the evidence was insufficient to support his unlawful possession of a firearm conviction and that the trial court violated his right to a fair trial during jury selection. The trial court denied the motion, and this timely appeal followed.

### *Analysis*

#### I.   *Batson Challenge*

The defendant argues the trial court denied his "right to a fair trial by a jury of his peers" by permitting "the dismissal of the only minority member of the jury pool" in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The State disagrees, arguing that "the trial court properly permitted the dismissal of a minority juror after [its] peremptory challenge" because "[t]he defendant did not make a prima facie case of purposeful discrimination and the State had a race-neutral reason for striking" the juror. Upon our review, we agree with the State.

"Under the Equal Protection Clause of the Fourteenth Amendment, neither the state prosecutor nor the defendant may exercise a peremptory challenge to remove a prospective juror solely on the basis of race." *State v. Marcus Antonio Logan*, No. W2008-00736-CCA-R3-CD, 2009 WL 782757, at *2 (Tenn. Crim. App. Mar. 25, 2009) (citing *Batson v. Kentucky*, 476 U.S. 79 (1986); *Georgia v. McCollum*, 505 U.S. 42 (1992)). "Although a defendant has no right to a petit jury composed in whole or in part of persons of [the defendant's] own race, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (internal quotation omitted). The *Batson* court provided a three-step process for evaluating whether a juror has been impermissibly excluded on the basis of race. First, the defendant must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. 79, 93-94 (citation omitted). "Once the defendant makes the requisite showing, the burden shifts to the State to explain adequately the racial exclusion." *Id.* at 94 (citation

omitted). "The race-neutral explanation need not be persuasive or even plausible." *Logan*, 2009 WL 782757, at \*2 (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "Unless purposeful discrimination is inherent in the explanation, the reason offered will be deemed race-neutral." *Id.* "Finally, if the proponent provides a race-neutral explanation, the trial court must then determine, from all the circumstances, whether the explanation is a pretext and whether the opponent of the peremptory challenge established purposeful discrimination." *Id.* (citations omitted). "If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded." *Id.* (citing *State v. Hugueley*, 185 S.W.3d 356, 369 (Tenn. 2006); *Woodson v. Porter Brown Limestone Co., Inc.*, 916 S.W.2d 896, 903 (Tenn. 1996)). "When determining the existence of a *Batson* violation, the trial court must carefully articulate specific reasons for each finding on the record." *Id.* at \*3 (citation omitted). "'On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous.'" *Id.* (quoting *Woodson,* 916 S.W.2d at 906).

Here, the defendant argues the trial court erred in allowing the State to use a peremptory challenge to exclude the only African-American prospective juror from the jury venire. The defendant's assertion, however, is not made clear in the record. Instead, the record shows that during voir dire, the trial court introduced counsel for both the defendant and the State and then asked the jurors if they knew either party. In response, the prospective juror at issue, Mr. Kemp, indicated that defense counsel represented his son on a prior matter and, as a result, he had a favorable impression of defense counsel. Regardless, Mr. Kemp stated he could be fair and impartial if selected to serve as a juror.

The jury selection process continued, the trial court asked the parties if they had any challenges for cause, and the State presented one challenge to Juror Brewer, and the defendant agreed with the State's challenge. The State then asked if the trial court was ready for peremptory challenges and stated, "I'll, obviously, strike Mr. Kemp." After the State mentioned Mr. Kemp, the following exchange occurred:

> [The trial court]: Yeah. So I'm going to find that if the State chooses to make a peremptory challenge on Mr. Kemp, then that is a race neutral reason, that he represented his -- well, you represented his son.
>
> [Defense counsel]: But in such a small jury –
>
> [The trial court]: Yeah. It doesn't matter. As long as there is any race neutral reason, that's sufficient, and I would find that -- that it is. So . . .
>
> [Defense counsel]: And I understand it, but I'd just like that noted on the record.

[The trial court]:  I understand.

The trial court subsequently excused Mr. Kemp from the jury, along with five others, and counsel for both parties accepted those remaining as the impaneled jury.

Based upon the record, the defendant is not entitled to relief on the merits of his claim as the record indicates the State provided a race-neutral reason for using a peremptory challenge to strike Mr. Kemp.  More specifically, the record makes clear the State challenged Mr. Kemp because defense counsel previously represented Mr. Kemp's son in a legal matter and stated he had a favorable feeling about defense counsel.  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral."  *Logan*, 2009 WL 782757, at *3 (citing *Purkett*, 514 U.S. at 769).  Nothing in the record suggests a discriminatory intent behind the State's explanation for striking Mr. Kemp.  Thus, not only does the record indicate that the defendant failed to establish "a prima facie case of purposeful discrimination," but also the record demonstrates the State provided a race-neutral reason for striking Mr. Kemp.  Because no facts exist to establish Mr. Kemp was impermissibly excluded from the jury on the basis of race, the defendant's argument is without merit, and he is not entitled to relief.  *Batson*, 476 U.S. 79, 93-94.

## II.    *Sufficiency of the Evidence*

The defendant also asserts the evidence was insufficient to support his conviction for unlawful possession of a firearm by a convicted felon.  When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  Our Supreme Court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Unlawful possession of a firearm by a convicted felon occurs when any person who has previously been convicted of a felony drug offense subsequently unlawfully possesses a firearm. Tenn. Code Ann. § 39-17-1307(b)(1)(B). Possession may be actual, constructive, or joint. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978); *see also State v. Bigsby,* 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses an item when he or she has "'the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). With respect to a firearm, "constructive or

joint possession may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm." *Key*, 563 S.W.2d at 188.

Here, the record indicates that on January 1, 2019, the defendant dropped a firearm from the window of an apartment where officers were conducting a "knock-and-talk." While Officer Jackson spoke with two women at the front door of the apartment, Officer Gerlach was positioned outside on the perimeter. From his position, Officer Gerlach heard a noise, looked up at the apartment window, and saw a black, male hand drop a firearm from the window. Officer Gerlach watched as the firearm dropped from the window, hit an air conditioning unit, and then fell to the ground. Officer Gerlach informed the officers at the front door about the firearm, and the officers asked the remaining inhabitants of the apartment to present themselves. The defendant subsequently emerged from a bedroom in the apartment. He was the only male inhabitant and the only inhabitant who was not already engaged with the police at the time the gun was dropped. After detaining the defendant, officers entered the bedroom and observed an open window. Below the window was the air conditioning unit and the firearm that Officer Gerlach saw from his position outside. The State also established that the defendant's criminal record included two Class E felony convictions for simple possession/casual exchange of a controlled substance. Tenn. Code Ann. § 39-17-418. From these facts, a rational trier of fact could have found the defendant guilty of unlawful possession of a firearm by a convicted felon. Tenn. Code Ann. § 39-17-1307(b)(1)(B). Although the defendant argues that the proof was merely circumstantial, the trier of fact is entrusted with determining the weight to be given to circumstantial evidence and evaluating the credibility of witnesses, and, based on the verdict, the jury reconciled the evidence in favor of the State. *Campbell*, 245 S.W.3d at 335; *Dorantes*, 331 S.W.3d at 379. This Court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. Accordingly, sufficient evidence exists to support the defendant's conviction, and he is not entitled to relief.

### *Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE

- 7 -